**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert POTTER, Christopher Howard,**
**and Mary Kay Lindstroth,**
**Defendants-Appellants.**

Nos. 86–1325, 86–1333, 86–1334.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 7, 1987.

Decided Oct. 21, 1987.

As Amended on Denial of Rehearing
Dec. 18, 1987.

John R. Duree, Jr., Inc., by John R. Duree, Jr., Charles W. Blakeley, III, and Larry Barlly, Federal Public Defenders, Sacramento, Cal., for defendants-appellants.

Gloria C. Phares, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before ANDERSON, BOOCHEVER and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Christopher Howard and Robert Potter conditionally pled guilty to manufacturing methamphetamine in violation of 21 U.S.C. § 841(a)(1); Mary Kay Lindstroth conditionally pled guilty to possession of methamphetamine in violation of 21 U.S.C. § 841. All three defendants reserved their right to appeal the order of the district court denying their motion to suppress evidence against them. We affirm the district court.

## FACTS

Stuart E. Till, an agent of the Bureau of Narcotics Enforcement (BNE) of the California Department of Justice, on February 26, 1986 filed an affidavit as the basis for seeking two search warrants. Till indicated that he had been in police work involving narcotics for 11 years, almost seven of them with the BNE; that he had attended a number of courses of study focused on the investigation of the manufacture and distribution of narcotics; that he had participated in the investigation of fifty drug laboratories; and that he had been involved in the dismantling of more than 25 secret methamphetamine laboratories. In connection with the warrants he sought Till had relied on information given him by BNE agents Matt Campoy and J.P. Johnston. The information set out in Till's affidavit was substantially as follows:

On February 7, 1986 the agents had observed a man buying items at Grau-Hall Scientific Co. in Sacramento—items determined to include thionyl chloride, acetone, vacuum pump oil, vacuum pump gas, and hardware, all materials that could be used in the manufacture of methamphetamine. Surveillance of the buyer led them to watch an apparent pick up of the materials involving Christopher Howard, a man already arrested in Sacramento County for possession of methamphetamine for sale. Two weeks later, on February 20, 1986, Howard was himself observed purchasing from Grau-Hall items which turned out to be a reaction flask, a Buchner funnel, a beaker, and other devices used to make methamphetamine. Howard then drove to an ice company where he bought dry ice, a substance also used in making methamphetamine. He went on to 3621 Loma Drive, a residence in an isolated rural area in Shingle Springs, California.

On February 21 Howard drove to 8011 Joaquin Way, a dirt road in Shingle Springs. While Howard was there he was in the company of his girl friend, Carrie Bockman. Between 8:30 and 9:00 in the evening while Howard and Bockman were there, an agent heard noises indicative of construction.

On February 25, 1986, during the evening, Till heard the noises of construction at 8011 Joaquin Way and observed two men on the premises, identified by him as Robert Potter and Danny Melohn. Another investigator overheard one of the men on the premises say, "Get a hold of Chris to see how he wants it." The men were moving back and forth from the house to a barn approximately 30 feet to the west of the house.

The Sacramento County Sheriff's Department informed Till that a confidential informer, who had in the past provided reliable information about narcotics, had informed the department that Christopher Howard and Robert Potter were currently making methamphetamine and that Danny Melohn might be associated with them; the informant's information came from someone who was selling for Howard and Potter. Till further learned from Pacific Gas and Electric Co. that the power consumption for the last two months at 3621 Loma Drive, Shingle Springs, had been between 4,000 and 5,400 kilowatts. Normal consumption would have been no more than 2,000 kilowatts. Till knew that methamphetamine labs consume a large amount of power.

Till stated that Potter had "numerous arrests for possession of methamphetamine for sale" and other crimes and that he was a convicted felon. He also stated Howard had been convicted of the possession of methamphetamine and of receiving stolen property.

On February 27, 1986, on the basis of Till's affidavit, Magistrate Esther Mix issued warrants to search 8011 Joaquin Way and 3621 Loma Drive for methamphetamine and various named devices and chemicals used in its production and storage. At 8011 Joaquin Way the agents seized a methamphetamine laboratory, one and one-half pounds net weight of the drug, $10,000 in cash and over 47 guns and explosives. Potter and Lindstroth, who were present, were arrested. At 3621 Loma Drive the agents found a microwave oven containing one-half pound net weight of methamphetamine. Howard, who was there, was arrested.

## PROCEEDINGS

The defendants moved to suppress the evidence, contending that the application for the warrants failed to establish probable cause and that several allegations in Till's affidavit were false. After an evidentiary hearing the district judge stated his belief that Till had mistakenly but not intentionally identified Danny Melohn as present on February 25, 1986 and that Till's affidavit had stated with undue certainty that he had seen Melohn. The district judge also found two errors in Till's reading of rap sheets: Potter was not, as Till's affidavit stated, a convicted felon; Howard had never been convicted of selling methamphetamine. The district judge characterized these errors as ones which "experienced officers ought not to make," but found that they had not been made "in reckless disregard of the truth; they were simply careless errors." The district judge concluded that as a matter of law, the agents were in good faith and, inadequate though the probable cause had been as to Joaquin Way, the agents were entitled to rely on the warrants. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed. 2d 677 (1985). He denied the motions to suppress. The defendants appealed.

## ANALYSIS

### Probable Cause

■ There is no dispute that Magistrate Mix had probable cause to issue the warrant as to Loma Drive. She had the sworn declaration of an agent experienced in the investigation of methamphetamine that he had reason to believe that the substance was being made and kept at the two locations to be searched. In support of this belief her affiant pointed to the fact that Christopher Howard had been seen buying the equipment, chemicals and ice necessary for its manufacture; that the power being used at Loma Drive suggested a lab was being run; and that a confidential informant reliable in the past had learned from a seller for Howard and Potter that these two men were actually now engaged in making methamphetamine.

■ The defendants attack the warrant for Joaquin Way. We need not decide if Howard has standing to raise this objection. The defendants stress that there was no evidence of unusual power consumption at Joaquin Way and that as far as the agents knew Howard had only been there once. The defendants make light of the

construction noises heard two evenings at Joaquin Way and the overheard reference to Chris as the one in charge. Once it is considered, however, that there was probable cause to believe that Howard was running a methamphetamine lab at Loma Drive, there was reason to believe that he was collaborating with Potter, as the informant had said; and there was reason to believe that the nocturnal activities at Joaquin Way of Potter and Howard were not innocent and that the construction going on was likely related to an extension or replacement of the lab believed to exist at Loma Drive.

As so often happens in these cases, the defendants isolate acts or circumstances which in themselves are innocent and refuse to admit the force that converging details have in creating probability. Precursors innocent in themselves appear in an entirely different light when they involve a man already believed with cause to be running a methamphetamine lab. The informant's information about Howard and Loma Drive had been circumstantially corroborated. Since Potter had not been seen at Loma Drive it was reasonable to conclude that the manufacturing conspiracy, asserted by the informant to be going on with him, was taking place at the barn on Joaquin Way. Magistrate Mix did not need the kind of evidence necessary to convict anyone beyond a reasonable doubt. She was supposed to make a common sense, practical judgment. *Illinois v. Gates*, 462 U.S. 213, 236–37, 103 S.Ct. 2317, 2331–32, 76 L.Ed.2d 527 (1983). She made that judgment. There was a "substantial basis" for her to believe evidence of wrongdoing would be found. *Massachusetts v. Upton*, 466 U.S. 727, 732, 733, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984); *United States v. Michaelian*, 803 F.2d 1042, 1044 (9th Cir.1986).

### The Errors in the Affidavit

As a matter of fact the district judge found the errors were not intentional. There was no clear error in these findings. Howard had been convicted of other crimes, although not of possessing meth-

amphetamine for sale. Potter had been found guilty of an offense as a minor and, while not a felon, had a criminal arrest record. Till believed he had spotted Melohn on the premises. The mistakes, as a matter of law, were not made in reckless disregard of the truth. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed. 2d 667 (1978). Moreover, while the mistakes undoubtedly were details increasing the probability that crime was afoot and contraband could be found, they were not crucial. Melohn's presence was a very minor corroboration of the informant. Potter's believed status as a felon was not the major fact suggesting he was now making methamphetamine. Howard's erroneously alleged conviction was not as significant as his recent arrest for possession of methamphetamine. All three mistakes can be corrected and probable cause remains.

AFFIRMED.