945 F.2d 409
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose SOSA and Guillermo Armando Fernandez, Defendants-Appellants.
 Nos. 90-50451, 90-50583.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 8, 1991.
Decided Oct. 4, 1991.
 
 1
 Before REINHARDT and FERNANDEZ, Circuit Judges, and SMITH, District Judge*.
 
 
 2
 MEMORANDUM**
 
 
 3
 In these consolidated appeals, defendants-appellants Jose Sosa and Guillermo Fernandez appeal the district court's denial of their motion to suppress evidence. We affirm.
 
 
 4
 Sosa, Fernandez, and five co-defendants were indicted on charges of conspiracy and possession with intent to distribute, after police arrested them and seized over 2000 kilograms of cocaine at various locations in southern California. Defendants moved to suppress the cocaine and other evidence. The district court held a three-day evidentiary hearing; the motion was granted in part and denied in part.
 
 
 5
 Sosa eventually pled guilty to two counts of facilitating narcotics trafficking, 21 U.S.C. § 843(b). Fernandez pled guilty to one count of possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1). Both defendants reserved their right to appeal the district court's ruling on the suppression motion.
 
 
 6
 The record below and the briefs on appeal set forth in detail the observations the police made during the five days that defendants were under surveillance. At oral argument, appellants agreed that the only issue before us is whether the police had reasonable suspicion to stop the two trucks containing Sosa and two co-defendants. If the stop and search of the trucks were lawful, then the police had probable cause to arrest Fernandez.
 
 
 7
 The trial court's determination of reasonable suspicion is reviewed de novo, but the findings of fact underlying that determination are reviewed for clear error. Sutton, 794 F.2d at 1426; see United States v. McConney, 728 F.2d 1195, 1200-04 (9th Cir.) (en banc), cert. denied, 469 U.S. 824 (1984).
 
 
 8
 The police needed reasonable suspicion to stop the trucks on the freeway. United States v. Sutton, 794 F.2d 1415, 1426-27 (9th Cir.1986); see United States v. Sharpe, 470 U.S. 675, 682 (1985). Reasonable suspicion is an objectively reasonable, founded suspicion, based on the totality of the circumstances, that the person is involved in criminal activity. United States v. Ramirez-Sandoval, 872 F.2d 1392, 1395 (9th Cir.1989) (reasonable suspicion existed to detain van occupants).
 
 
 9
 Sosa and Fernandez argue that the police lacked reasonable suspicion to pull over the trucks. We disagree. The district court identified a number of facts in the record that supported the officers' conclusion that defendants were engaged in illegal activity. These facts and circumstances, which in themselves are innocent, nevertheless greatly increased the probability that narcotics trafficking was underway. United States v. Potter, 830 F.2d 1049, 1052 (9th Cir.), cert. denied, 485 U.S. 937 (1988) (probable cause existed to issue warrant to search suspected methamphetamine lab). The district court found that the trucks and drivers had ties to Hialeah and Newark, two drug-trafficking centers; that Fernandez' truck was registered to a post-office box address; that the trucks were loaded in public view at the Howard Johnson's (a procedure consistent with an attempt to conceal the location of the stash house); that defendants made several calls to beeper numbers from pay phones; and that some defendants engaged in evasive driving. The district court also identified facts indicating that the defendants' behavior was inconsistent with legitimate trucking. For instance, the drivers and their helpers lounged about the hotel for a day and conducted no trucking business. Also, unlike most independent truckers, they made no effort to call load brokers to arrange for loads; they loaded the boxes at an unusual location; they picked up no freight other than the boxes; and they hurled the boxes onto the truck instead of packing them carefully.
 
 
 10
 "Perhaps none of these facts, standing alone, would give rise to a reasonable suspicion; but taken together as appraised by an experienced law enforcement officer, they provided clear justification to stop the vehicles and pursue a limited investigation." Sharpe, 470 U.S. at 682 n. 3; see also Potter, 830 F.2d at 1052 (lamenting defendants' refusal "to admit the force that converging details have in creating probability"); Ramirez-Sandoval, 872 F.2d at 1395. Each fact the district court relied on, taken alone, would not justify a stop, but they acquire great significance when viewed in the aggregate by experienced officers. Sutton, 794 F.2d at 1427. After observing the many comings and goings, the evasive driving, the beeper calls, and the unusual locations selected for meetings and loadings, the officers had an objectively reasonable, well-founded suspicion that defendants were engaged in illegal activity by the time the trucks drove out of the Howard Johnson's on the afternoon of December 16th. The stop of the trucks was therefore not unlawful.
 
 
 11
 Sosa and Fernandez also argue that Sosa and two co-defendants gave invalid consents to search the trucks because the consents stemmed from arrests without probable cause. The district court's ruling on arrest is a mixed question that we review de novo. United States v. Harrington, 923 F.2d 1371, 1372 (9th Cir.1991). An arrest occurs when, in view of all the circumstances, a reasonable person would not have believed he or she was free to leave. Florida v. Bostick, 59 U.S.L.W. 4708, 4710 (1991); Florida v. Royer, 460 U.S. 491, 502-03 (1983). The district court found,
 
 
 12
 None of the officers present drew weapons, used abusive language or raised his voice. Neither [co-defendant] nor Sosa were told that they were under arrest or not free to go, although [the arresting officer] in fact would not have allowed them to leave.
 
 
 13
 Sosa relies heavily on the district court's finding that the arresting officer had the subjective intent to detain him in an effort to show that he was under arrest as soon as he got out of the truck. His attempt to resurrect the inquiry into the subjective intent of the arresting officer is unavailing in light of Royer's objective inquiry into whether a reasonable person would have felt free to leave. Royer, 460 U.S. at 502-03; 2 W. LaFave, Search and Seizure § 5.1(a) at 388-89 (2d ed. 1987); cf. Orozco v. Texas, 394 U.S. 324, 327 (1969). Factors in the objective inquiry into when an investigative stop becomes an arrest include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." United States v. Mendenhall, 446 U.S. 544, 554 (1980) (Stewart, J.); see W. LaFave, supra, § 5.1(a) at 388. The length of time that elapses after the stop is also relevant. "If an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop." Sharpe, 470 U.S. at 685.
 
 
 14
 The record reflects only one fact indicating that Sosa and two co-defendants were under arrest when they were ordered out of the truck--the presence of several officers on the scene. When this fact is viewed in light of other facts--absence of threats, absence of weapons, absence of notice that they were under arrest, and brevity of the roadside detention, we conclude that Sosa and his co-defendants were not under arrest before they consented to the searches of the trucks. Cf. Harrington, 923 F.2d at 1373 (officer's drawn weapon not a sufficient condition to convert a stop into an arrest).
 
 
 15
 In our view, a valid investigative detention was followed in six to ten minutes by a valid consent to search the truck and its contents. The search disclosed the cocaine, which created probable cause to arrest the trucks' occupants. As the Supreme Court explained in Royer, when a suspect gives a valid consent in the course of a valid investigative stop, the fruits of that search are admissible. "We also agree that had Royer voluntarily consented to the search of his luggage while he was justifiably being detained on reasonable suspicion, the products of the search would be admissible against him." 460 U.S. at 502; United States v. Lindsey, 877 F.2d 777, 783 (9th Cir.1989) ("A person in custody is capable of giving valid consent to search"). We hold that during the valid investigative detention at the side of the freeway, co-defendant Alvarez consented to a search of the truck six to ten minutes after the stop. Cf. Sharpe, 470 U.S. at 687-88 (upholding 20 minute investigative stop when suspects' evasive actions contributed to the delay). The district court specifically found that Alvarez gave consent and signed the forms in both English and Spanish; it further noted that Alvarez did not contest the validity of his consent. A valid consent to a search of a vehicle, after a valid investigative detention, does not offend the fourth amendment.
 
 
 16
 In light of Fernandez' counsel's concession at oral argument that the lawfulness of his arrest depends on the lawfulness of the stop of the trucks, we need not address his remaining contentions.
 
 
 17
 For the foregoing reasons, we conclude that the district court correctly held that reasonable suspicion supported the stop of the trucks and that a valid consent occurred before the search of the trucks. The judgment of the district court is therefore
 
 
 18
 AFFIRMED.
 
 
 
 *
 The Honorable Fern M. Smith, United States District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided in Circuit Rule 36-3