956 F.2d 275
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Roberto CAIRO, Defendant-Appellant.
 No. 90-50586.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 7, 1992.*
Decided Feb. 25, 1992.
 
 Before TANG, KOZINSKI and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Roberto Cairo was suspected of shoplifting by a shopping mall security guard. The guard called the police, who followed Cairo, and then confronted him with their suspicions. After some questioning, the police determined Cairo had not shoplifted, but had stolen the credit card used to make the purchases. Cairo was arrested, and stolen mail was seized from his car. Before trial on the charge of possession of the stolen mail, Cairo moved to suppress the evidence. Based on the denial of that motion, he entered a conditional plea of guilty.
 
 
 3
 On appeal, Cairo argues: (1) he was under arrest following his production of the credit card and receipt; (2) alternatively, even if he was merely detained in the garage, the detention was illegal; (3) finally, assuming the detention was legal, he was under arrest at the time he went from the garage to the substation. With respect to his third argument, Cairo claims: (a) there was no probable cause for his arrest at that time; and (b) the district court clearly erred in finding he consented to go with the officers to the substation. We have jurisdiction, and we affirm.
 
 
 4
 (1) Was Cairo Illegally Arrested in the Garage? Cairo does not claim the initial stop, during which police asked to see his credit card and receipts, was improper. Indeed, there was reasonable suspicion to stop Cairo for shoplifting. See generally United States v. Sutton, 794 F.2d 1415, 1426 (9th Cir.1986). However, Cairo argues he was under arrest as soon as the police had finished inspecting the credit card and receipts. This argument lacks merit. The police merely asked Cairo for identification and checked the identification through their records. This is not enough to constitute an arrest. See United States v. Harrington, 923 F.2d 1371, 1373 (9th Cir.1991), cert. denied, 112 S.Ct. 164 (1991); cf. Florida v. Royer, 460 U.S. 491, 497-98 (1983) (plurality opinion); United States v. Ricardo D., 912 F.2d 337, 340 (9th Cir.1990).
 
 
 5
 (2) Was Cairo Illegally Detained in the Garage? Cairo also argues the request for identification amounted to an illegal detention.[1] As noted above, the initial detention to check Cairo's receipts and credit card clearly was proper, as the police had reasonable suspicion that Cairo had shoplifted from Broadway.
 
 
 6
 However, even though the detention initially was valid, Cairo argues continuing the detention to ask him for identification violated the Fourth Amendment. A detention may last only as long as is necessary to effectuate the purpose of the stop. Royer, 460 U.S. at 500 (plurality opinion). A person "may not be detained even momentarily without reasonable, objective grounds for doing so...." Id. at 498 (plurality opinion); cf. United States v. Thomas, 863 F.2d 622, 628 (9th Cir.1988) ("Each element [of a stop and frisk] ... must be analyzed separately; the reasonableness of each must be independently determined.").
 
 
 7
 However, after it was established Cairo had not shoplifted, new grounds arose for suspecting him of another crime. Police may continue a detention based on information learned during a detention for one crime, even if the information is relevant to a different crime. Cf. United States v. Medina-Gasca, 739 F.2d 1451, 1453 (9th Cir.1984) (reasonable suspicion may ripen into probable cause to arrest through the occurrence of facts or circumstances after the stop).
 
 
 8
 Once the police knew Cairo had not shoplifted, the primary ground for their continued suspicion was that Cairo was Hispanic, and had a credit card in the non-Hispanic name of "Gene Kraft." In certain limited circumstances, race is a permissible factor for a police officer to consider in making (or continuing) an investigatory stop. Thomas, 863 F.2d at 626 & n. 5. This is one of those cases. Cairo also had been acting watchfully, and had walked down two different rows of cars in the parking lot. Reasonable suspicion exists "when an officer is aware of specific articulable facts, together with the rational inferences drawn therefrom, that reasonably warrant suspicion that the person to be detained may have committed or is about to commit a crime." Sutton, 794 F.2d at 1426. Police may rely on the totality of circumstances when determining reasonable suspicion. United States v. Mejia, No. 91-50005, slip op. 16991, 16998 (9th Cir. Dec. 24, 1991). Considering the totality of the circumstances, the police had reasonable suspicion Cairo had stolen Kraft's credit card; the continued detention was appropriate.
 
 
 9
 (3) Was Cairo Arrested When He Went to the Police Substation? We have determined Cairo's detention was legal, and so we must consider Cairo's final argument, that he was under arrest when the police officers escorted him to the substation. The district court specifically found he consented to go to the substation. "Defendant then consented to accompany the officers to their office inside the mall to verify his identity, since he had no official form of identification." The district court based this finding on credibility assessments. We review for clear error the finding of fact, United States v. Shaibu, 920 F.2d 1423, 1425 (9th Cir.1990); cf. Mejia, slip op. at 16997, 17000;[2] we must pay special deference to a district court's findings as to the credibility of witnesses, United States v. Ramos, 923 F.2d 1346, 1356 (9th Cir.1991). There was no clear error.
 
 
 10
 In any case, there was probable cause to arrest Cairo at the time he went to the substation. See United States v. Potter, 830 F.2d 1049, 1052 (9th Cir.1987), cert. denied, 485 U.S. 937 (1988).
 
 
 11
 Cairo's Fourth Amendment rights never were violated. Hence the evidence properly was admitted against him, and his conviction is
 
 
 12
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The government concedes Cairo was detained in the garage. Cairo in fact was detained. See Royer, 460 U.S. at 501-02 (plurality opinion). The dispute centers on whether the detention was justified under the Fourth Amendment
 
 
 [2]
 In Mejia, the court noted, "[t]he question whether as a general rule certain types of actions give rise to an inference of consent ... is a question of law that we review de novo." Mejia, slip op. at 16997. However, the court then reviewed for clear error the district court's finding in that case that the defendant's wife consented to a search of the defendant's house. Id. at 17000
 The mystery is explained by the opinion in Shaibu.
 A district court's finding that a person consented to a search is generally treated as a factual determination, reversible only if clearly erroneous.
 There is at least one exception to this principle, however. When we are determining whether as a general rule certain types of actions give rise to an inference of consent, de novo review is appropriate. The ... exception is justified by the fact that the district court's ability to draw inferences from first-hand observation of testimony, demeanor and physical evidence places the district court in no better position than the appeals court when it comes to formulating a general rule applicable to a wide class of cases.
 Shaibu, 920 F.2d at 1425 (citations omitted).
 In this case, the district court was not formulating a general rule of implied consent, but was determining whether there was implied consent in Mr. Cairo's particular case. The court did observe testimony first hand, and specifically found: "The Officers' testimony ... is far more credible than defendant's self-serving statements." Accordingly, we review for clear error.