**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 00-20682**
_____


**UNITED STATES OF AMERICA,**

**Plaintiff-Appellant,**


**VERSUS**


**LINDA SUNIGA YORLE HERNANDEZ,**

**Defendant-Appellee.**


_____

Appeal from the United States District Court
for the Southern District of Texas
_____


January 11, 2002

Before JONES, SMITH, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Defendant-Appellee, Linda Suniga Yorle Hernandez, was indicted for possession with intent to distribute more than one kilogram of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(i). The district court granted Hernandez's motion to suppress the heroin seized during a search of her luggage at a bus station. The district court concluded that (1) the officer's manipulation of Hernandez's suitcase was an illegal search in violation of the

1

Fourth Amendment under **Bond v. United States**, 529 U.S. 334 (2000), and (2) Hernandez's subsequent consent to search her suitcase did not cure the earlier Fourth Amendment violation.  We AFFIRM.


## I.  BACKGROUND

On September 7, 1999, members of the Houston Police Department were surveying passengers at the Greyhound bus station in Houston for possible drug traffickers.  During this drug interdiction effort, Officer Armando Ordaz, who was not in uniform, observed Hernandez enter the station.  He continued to observe her as a result of alleged suspicious activity.

Officer Ordaz testified that Hernandez entered the station with a new black suitcase, which did not have identification tags. In addition, Officer Ordaz noted that her suitcase appeared to be heavy by the way she had difficulty moving it when she was standing in the passenger line.  According to Officer Ordaz, Hernandez appeared nervous and frequently looked around the station as if she were trying to determine whether she was being observed.  Hernandez also was observed checking her ticket several times and "swaying back and forth," which Officer Ordaz considered evidence that she was anxious for the bus to depart.  Officer Ordaz, furthermore, noted that Hernandez guarded her suitcase "in a possessive manner." Moreover, Officer Ordaz stood behind Hernandez in the passenger line and observed that she was traveling to Washington, D.C., which

2

is, according to DEA investigation reports, a major "drug demand city."

Officer Ordaz lost visual contact with Hernandez when he was called away by another officer. Later, when Officer Ordaz's attention was returned to Hernandez, he observed that both she and her suitcase were aboard the Washington bound bus. Officer Ordaz approached the bus and entered the luggage compartment to search for Hernandez's suitcase. Although Hernandez's suitcase did not have any identification tags, Officer Ordaz was able to locate it because he recalled that the brand name was "Bagmax." Without taking the suitcase out of the luggage compartment, Officer Ordaz picked it up and turned it around. He further manipulated the suitcase by pressing on the outside of it with his hands. He observed that it had "something solid or heavy in the center of it." At Hernandez's detention hearing, Officer Ordaz testified that after handling the suitcase and feeling something solid or heavy in it, he became more suspicious. However, on redirect examination by the government, Officer Ordaz denied that he became more suspicious after handling the suitcase.

After manipulating Hernandez's suitcase in the luggage compartment, Officer Ordaz consulted with other police officers, and they decided to speak with her. Officer Ordaz then boarded the bus and approached Hernandez. He identified himself as a police officer and questioned Hernandez about her travel plans. Officer Ordaz then asked Hernandez to exit the bus with him. Officer Ordaz

3

testified that Hernandez appeared nervous when she was leaving the bus and that she produced seven one-way bus tickets, all of which were from Houston to Washington, D.C., issued in Hernandez's name and paid for with cash.

Hernandez told Officer Ordaz that she had a tan backpack as well as a suitcase, which she described to him. Officer Ordaz then pulled Hernandez's suitcase from the luggage compartment and asked her to identify it. Hernandez told Officer Ordaz that she was transporting the suitcase for someone else who had given it to her in San Antonio and that she did not know its contents.

Officer Ordaz asked Hernandez for permission to open her suitcase, and she consented. However, Hernandez did not know the combination to the lock on the suitcase. As a result, Officer Ordaz testified that he pried open the zipper of the suitcase using either a pen or knife. While inspecting the contents of the suitcase, Officer Ordaz discovered more than four kilograms of heroin hidden within socks.

Hernandez initially pled guilty to possessing, with the intent to distribute, more than one kilogram of heroin. However, prior to her sentencing, the United States Supreme Court decided *Bond v. United States*, 529 U.S. 334, 335 (2000), holding that a "law enforcement officer's physical manipulation of a bus passenger's carry-on luggage violated the Fourth Amendment's proscription against unreasonable searches." As a result, the district court

4

allowed Hernandez to withdraw her guilty plea.

Hernandez then moved to suppress the heroin. Rather than holding an evidentiary hearing on the suppression motion, the parties agreed to let the district court decide on the basis of the transcript of Hernandez's detention hearing and the DEA's report of the investigation. Hernandez argued that under *Bond*, the manipulation of her suitcase was an illegal search violating the Fourth Amendment and that the resulting contraband was "fruit of the poisonous tree" that must be suppressed. *See **United States v. Rivas***, 157 F.3d 364, 368 (5th Cir. 1998). The government argued that the contraband should not be suppressed because Officer Ordaz had consent to search the suitcase, and because of the inevitable discovery/independent source doctrine.

The district court granted the motion to suppress. The court concluded that *Bond* was directly on point and found that Hernandez's Fourth Amendment rights were violated because Officer Ordaz searched her suitcase without probable cause and prior to obtaining consent. The court determined that the inevitable discovery/independent source doctrine did not apply because it was clear that the officers were not pursuing a substantial alternative line of investigation when the suitcase was being search. The court noted that no one had reported that drug trafficking was occurring at the bus station, much less that Hernandez might be involved. Also, there were no drug-sniffing dogs present to alert

5

the officers to Hernandez's suitcase. Notably, the court characterized Officer Ordaz's testimony that his suspicion concerning Hernandez did not increase after he had manipulated her suitcase as "untruthful." The reasons the district court concluded Ordaz was lying were that (a) it is "incredible" that feeling something suspicious in the bag did not increase Ordaz's suspicions; and (b) Ordaz gave inconsistent testimony on this point.

Furthermore, the court found that Officer Ordaz "was suspicious of Hernandez only because she looked nervous, she was anxious, her suitcase appeared heavy, the suitcase did not have an identification tag and the suitcase appeared new." However, the court noted that "none of these observations alone, or together, rose beyond suspicion." Rather, according to the court, those characteristics could have been observed from watching "an innocent person who is not engaged in drug trafficking." As a result, the court found "incredible officer Ordaz's testimony that his suspicions were unaffected by his 'touching and feeling' of the 'Bagmax' suitcase."

The court also concluded that Hernandez's subsequent consent did not cure the earlier violation. However, the court made no findings regarding the voluntariness of Hernandez's consent. The government appeals the district court's ruling.

## II.  STANDARD OF REVIEW

The district court's determination of fact in ruling on a motion to suppress are accepted unless the court's findings are clearly erroneous.  *United States v. Jones*, 234 F.3d 234, 239 (5th Cir. 2000).  A finding is clearly erroneous if the court is left with the "definite and firm conviction that a mistake has been committed."  *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).  Questions of law are reviewed *de novo*.  *Jones*, 234 F.3d at 239.  The court views the evidence in the light most favorable to the prevailing party, which in this case is the defendant.  *Id.*

## III.  Discussion

The government appeals the district court's grant of Hernandez's motion to suppress the heroin seized after searching her suitcase.  We note that the government does not argue on appeal that the district court erred in concluding that the physical manipulation of Hernandez's suitcase was an illegal search under the Supreme Court's decision in *Bond*.  It is well established that issues raised before the district court but not presented on appeal are waived.  *HC Gun & Knife Shows, Inc. v. City of Houston*, 201 F.3d 544, 548 (5th Cir. 2000).  Therefore, we need not consider that issue in detail because the government has effectively

7

conceded that Officer Ordaz's manipulation of the suitcase was an illegal search.

The threshold question for this court is whether Hernandez's subsequent consent to search her luggage cured any possible Fourth Amendment violation.  When a person gives consent to search, that consent "may, but does not necessarily, dissipate the taint" of a prior Fourth Amendment violation.  *United States v. Chavez-Villarreal*, 3 F.3d 124, 127 (5th Cir. 1993).  The admissibility of the challenged evidence "turns on a two-pronged inquiry:  1) whether the consent was voluntarily given; and 2) whether the consent was an independent act of free will." *Jones*, 234 F.3d at 242 (citing *Chavez-Villarreal*, 3 F.3d at 127).  The first prong of this inquiry "focuses on coercion, the second on causal connection with the constitutional violation." *Chavez-Villarreal*, 3 F.3d at 127.

To determine whether consent was voluntarily given, the court uses a six factor test:  1) the voluntariness of the defendant's custodial status; 2) the presence of coercive police procedures; 3) the extent and level of the defendant's cooperation with the police; 4) the defendant's awareness of his right to refuse consent; 5) the defendant's education and intelligence; and 6) the defendant's belief that no incriminating evidence will be found. *Jones*, 234 F.3d at 242 (citing *United States v. Shabazz*, 993 F.2d 431, 438 (5th Cir. 1993)).  No single factor in this test is

8

dispositive. *Id.*

To determine whether the defendant's consent was an independent act of free will, breaking the causal chain between the consent and the constitutional violation, we must consider three factors: 1) the temporal proximity of the illegal conduct and the consent; 2) the presence of intervening circumstances; and 3) the purpose and the flagrancy of the initial misconduct. *Jones*, 234 F.3d at 243 (citing *Chavez-Villarreal*, 3 F.3d at 128).

### A. Voluntariness of Consent

Turning to the first prong of the test, we find that Hernandez's consent was voluntarily given. First, Hernandez's custodial status was voluntary. Hernandez maintains that she did not feel free to leave for Washington, D.C., after having a police officer board the bus where she was seated, identify himself, and then ask her to disembark from the bus. However, Hernandez was not in custody when she consented to leave the bus or gave her consent for the suitcase to be searched. She had not been arrested and there is nothing in the record to suggest that she did not feel she could refuse to give her consent or speak with Officer Ordaz. *See United States v. Cooper*, 43 F.3d 140, 146 (5th Cir. 1995) (finding, under similar circumstances, that because a reasonable person would have felt free to decline the officer's request, the initial contact with the defendant was a legitimate and completely consensual citizen-police encounter). Approaching someone who is

9

in a public place, identifying oneself as a police officer, and asking questions does not constitute a seizure. *United States v. Gonzales*, 842 F.2d 748, 752 (5th Cir. 1988) (citing *United States v. Hanson*, 801 F.2d 757, 761 (5th Cir. 1986)).

Second, Officer Ordaz's actions were not coercive. Hernandez contends that Officer Ordaz's actions of following her around in the bus station was intimidating and, thus, coercive. However, there is no evidence in the record to indicate that Hernandez even knew she was being observed by police officers. Officer Ordaz boarded the bus by himself. He did not display a weapon and he did not attempt to threaten Hernandez in any way.

Third, Hernandez's cooperation with the police was substantial. Hernandez argues to the contrary. She notes that she did not give Officer Ordaz the combination to her suitcase and that she falsely stated that there were no drugs in the suitcase and that she did not pack the suitcase. Nevertheless, Hernandez voluntarily agreed to get off the bus with Officer Ordaz. She willingly identified her suitcase and gave permission for Officer Ordaz to search it. There is nothing in the record that indicates Hernandez displayed any hostile actions toward any police officer or that she attempted to frustrate their investigation in any considerable manner.

Fourth, we find that it is not clear from the record whether Hernandez was aware of her right to refuse consent. The record indicates that Officer Ordaz did not inform her that she did not have to disembark from the bus upon his request or that she did not have to consent to the search of her suitcase. However, this factor is but one of six to be considered by this court. *United States v. Gonzales*, 79 F.3d 413, 421 (5th Cir. 1996). And, the government is not required to show that the defendant was aware of her right of refusal. *See* *Gonzales*, 842 F.2d at 755 (finding that "apprising" suspect of the right to refuse consent is not required to render the consent voluntary").

Fifth, the record indicates that Hernandez is well educated. Hernandez contends that she did not have any education or training in police-civilian interaction. This is not surprising. Most civilians do not have that type of education. However, Hernandez has graduated from medical school and claims to have been on her way to Washington, D.C., where she intended to pursue further medical training. In addition, she is conversant in both Spanish and English. There is nothing to indicate that a lack of education impacted the voluntariness of her consent.

Sixth, it is likely Hernandez knew that incriminating evidence would be found. However, if she did not know of any drugs inside the suitcase as she initially claimed, there would have been no reason for her to deny consent for a search. Thus, there is

nothing under this factor to indicate that her consent was not voluntary.

Based on the six factors discussed above, we find that Hernandez voluntarily consented to having the police search her suitcase. However, we must still determine whether the consent was an independent act of free will. In other words, we must consider whether the causal connection between the constitutional violation and Hernandez's consent was sufficiently broken.

## B. Consent as an Independent Act of Free Will

To determine whether the causal connection between the constitutional violation and Hernandez's consent was sufficiently broken, we must apply the three factors under the second prong of the admissibility test, which were already mentioned above. Having done that below, we find that there was not a sufficient break in the causal connection between the initial search of Hernandez's suitcase and the later search to which she consented. Therefore, even though Hernandez voluntarily consented to Officer Ordaz's opening her suitcase and searching it, her consent did not cure the Fourth Amendment violation caused by Officer Ordaz's prior manipulation of the suitcase.

First, there was a close temporal proximity between the illegal search of Hernandez's suitcase and her removal from the bus and the subsequent search with Hernandez's consent. Officer Ordaz's initial manipulation of Hernandez's suitcase and

12

Hernandez's consent were closely related in time. The government points to no intervening circumstances.

The police misconduct, however, was not flagrant. Officer Ordaz's physical manipulation of the suitcase likely would not have been considered a search under Fifth Circuit precedent at the time. Nevertheless, consideration of the above three factors leads this court to conclude that the causal connection between the violation and the consent was not broken. Therefore, we agree with the district court's finding that it was only after Officer Ordaz had manipulated the suitcase and had felt what he thought were narcotics that he decided to approach Hernandez and ask her for consent to search the suitcase.

Rather than consider the second prong of the test used to determine whether challenged evidence is admissible, the government cites *United States v. Ibarra-Sanchez*, 199 F.3d 753, 761 (5th Cir. 1999) (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)) for the proposition that, "To warrant suppression, the challenged evidence must have been obtained 'by exploitation of [the alleged] illegality.'" In *Ibarra-Sanchez*, the police officers made a felony stop of a van. As the officers approached the vehicle, they smelled an odor of marijuana and decided to conduct a "protective sweep" under *Terry v. Ohio*, 392 U.S. 1 (1968). They drew their weapons, ordered the passengers out of the van, handcuffed them, and placed them in the back of the police cars. *Ibarra-Sanchez*,

13

199 F.3d at 757. The defendants argued that the officers' show of force "converted a *Terry* stop based on reasonable suspicion into a full-blown arrest for which the officers had no probable cause." *Id.* at 760-61. The court, however, held the that there was no causal link between the alleged arrest and the evidence of marijuana because the police had probable cause to search the van for drugs, and "it made no difference to the ultimate result whether [the passengers] stood by the side of the road or sat handcuffed in police cars." *Id.* at 762.

In the instant case, however, the illegal search did make a difference. The district court found that Officer Ordaz became sufficiently suspicious to engage Hernandez in conversation only after he had detected a hard, heavy item in the suitcase. We cannot conclude that this factual finding is clearly erroneous because Officer Ordaz contradicted himself when he was asked about how the manipulation of the suitcase affected the investigation. The district court rejected Officer Ordaz's assertion that he had already decided to approach Hernandez before manipulating the suitcase and that his suspicions were unaffected by the illegal search.

The government also cites the Sixth Circuit's decision in *United States v. Flowal*, 234 F.3d 932 (6th Cir. 2000). In *Flowal*, DEA agents were informed that an airline passenger en route from Los Angeles to Fort Wayne, Indiana, matched a drug-courier profile.

14

*Id.* at 934. The agents intercepted Flowal's luggage while he was waiting for a connecting flight in Cincinnati. *Id.* The agents shook the luggage to see if anything moved around, but they did not discover anything suspicious. *Id.* In addition, a drug-sniffing dog did not alert the agents to any drugs inside the luggage. *Id.* Nevertheless, the agents approached Flowal and asked him for consent to search his luggage, which he authorized. *Id.* Flowal did not have a key to the luggage locks, so the officers had to open the bag by alternative means. *Id.* Inside the luggage, the officers found over five kilograms of cocaine. *Id.*

Flowal, citing *Bond*, claimed that the officers had violated his Fourth Amendment rights when they shook and pushed on the luggage to determine if there might be anything suspicious inside. The Sixth Circuit disagreed and explained that

> the search of Flowal's luggage was not unconstitutional under *Bond*. The officers investigated Flowal's luggage because he matched the drug courier profile, not because they had felt something suspicious in it. In other words, unlike the agents in *Bond*, the officers in this case had a reasonable belief that the luggage could contain contraband before ever touching it. In fact, neither the officers' prodding of the luggage nor the drug-sniffing dog revealed anything suspicious, hence the reason the officers approached Flowal and obtained his consent to search the bags.

*Flowal*, 234 F.3d at 935. Flowal, however, is inapposite to Hernandez's case. As we have already noted, in Hernandez's case the district court found that Officer Ordaz decided to approach

Hernandez only after he had felt something suspicious in her suitcase. There is no evidence that Officer Ordaz believed Hernandez's suitcase contained drugs before he manipulated it.

## IV. CONCLUSION

For the foregoing reasons, we hold that Hernandez's subsequent consent to search her suitcase did not cure the Fourth Amendment violation resulting from Officer Ordaz's prior manipulation of the suitcase. The judgment of the district court is AFFIRMED.

16

EDITH H. JONES, dissenting:

The panel majority here concludes that Hernandez voluntarily consented to the search of the black suitcase, but her consent did not overcome the taint of the suitcase's unconstitutional investigative squeeze by Officer Ordaz. Applying the exclusionary rule, they hold that evidence of 4 kilograms of cocaine from the drug seizure must be suppressed. With due respect, I dissent. I believe Hernandez's consent was a product of her free will and not of the exploitation of the unconstitutional conduct.

The exclusionary rule's primary purpose is to discourage unconstitutional police misconduct. See, e.g., Illinois v. Krull, 480 U.S. 340, 347, 107 S.Ct. 1160, 1165 (1987). Thus, evidence may be suppressed when it has been obtained directly or indirectly through illegal police activity. Wong Sun v. United States, 371 U.S. 471, 484, 83 S.Ct. 407, 416 (1963). The exclusionary rule is not, however, employed "when the nexus between the illegal police activity and attainment of the evidence is sufficiently attenuated so that the taint resulting from the misconduct is dissipated." United States v. Sheppard, 901 F.2d 1230, 1234 (5th Cir. 1990) (citing Wong Sun, 371 U.S. at 488, 83 S.Ct. at 417). When a suspect voluntarily consents to a search that reveals the incriminating evidence, this may, but does not necessarily,

17

overcome the taint of the illegal police activity. <u>Brown v. Illinois</u>, 422 U.S. 590, 604-05, 95 S.Ct. 2254, 2261-62 (1975).

The majority opinion follows these authorities and considers both the voluntariness of the suspect's consent and whether the consent represented an independent act of free will. <u>United States v. Chavez-Villareal</u>, 3 F.3d 124, 127 (5th Cir. 1993). Factors that bear on the latter issue, which the Supreme Court has also characterized as whether the consent was based on exploitation of illegality,[1] include: the temporal proximity of the illegal conduct and the consent, intervening circumstances, and "particularly, the purpose and flagrancy of official misconduct." <u>Rawlings v. Kentucky</u>, 448 U.S. 98, 107-09, 100 S.Ct. 2556, 2562-64 (1980). (quoting <u>Brown</u>, 422 U.S. at 603-04, 95 S.Ct. at 2261-62).

While the majority opinion finds Hernandez's consent to have been voluntary, it denies that her consent was an independent act of free will based solely on the factors of close temporal proximity with the bag squeeze, and no proof by the government of intervening circumstances. The majority concede that the officer's conduct in squeezing Hernandez's checked suitcase was not flagrant (and did not even violate Fifth Circuit law at the time),[2] but they

---

[1] <u>See</u> <u>Wong Sun</u>, 371 U.S. at 488, 83 S.Ct. at 417.

[2] The United States conceded <u>arguendo</u> a Fourth Amendment violation at oral argument, but it is far from certain that the Supreme Court's decision in <u>Bond v. United States</u>, 529 U.S. 334, 120 S.Ct. 1462 (2000), extends to the manipulation of the exterior of luggage consigned to transportation companies' baggage handling operations. In this court, manipulation of suitcases delivered to

18

ignore the Supreme Court's statement that this last circumstance is "particularly" important. See Brown, 422 U.S. at 603-04, 95 S.Ct. at 2261-62. In my view, the majority failed properly to balance these three factors.

This case differs critically from other Fifth Circuit cases in which the court concluded that consent was not the product of a suspect's free will. All of those cases involved prolonged illegal detention of suspects pursuant to traffic stops. United States v. Jones, 234 F.3d 234, 241 (5th Cir. 2000); United States v. Dortch, 199 F.3d 193, 201 (5th Cir. 1999); United States v. Chavez-Villareal, supra. In those cases, the suspects were not free to leave the roadside; identification papers or drivers' licenses had been retained by the law officers; and the suspects had to be aware that they were under investigation for crimes other than the minor traffic violations for which they were stopped. The temporal proximity, indeed simultaneity, of the illegal detentions and the suspects' subsequent consents did not simply exist. As a matter of law, we implied, it caused them to consent, for all practical purposes, because the illegal detentions continued until

_____

the baggage handling area (as opposed to those kept with the passenger in an on-board overhead compartment), has been held constitutional for some years. See United States v. Karman, 849 F.2d 928 (5th Cir. 1988).

19

they gave consent.[3]  In <u>Chavez</u>, the court pointed out the impact of the coercive police detention conduct.  <u>Chavez</u>, 3 F.3d at 127.

Here, however, temporal proximity did not function in the same way, since Hernandez never knew her bag had been squeezed or investigated.  One of our cases makes precisely this point, emphasizing that consent to search was effective where the suspect who gave consent did not know of the prior police misconduct. <u>United States v. Richard</u>, 994 F.2d 244, 252 (5th Cir. 1993).  And in any event, temporal proximity alone is not determinative of whether the consent was a product of the suspect's independent free will.  <u>See</u> <u>Kelley</u>, 981 F.2d at 1471.

Second, while Hernandez was not told that she was free to leave or could refuse consent to search, she was not detained illegally.  The police did not hold onto her I.D. or her tickets. There is no causal connection between her giving of consent and the illegal conduct in squeezing the suitcase.  As noted, illegal detention is the critical occurrence in all of the cases in which the exclusionary rule was ultimately applied.

Third, even the illegality of the detention and the temporal proximity are not determinative where the police did not

---

[3]  It is true, of course, that an illegal detention alone does not preclude a finding of voluntariness. <u>See</u>, <u>e.g.</u>, <u>United States v. Kelley</u>, 981 F.2d 1464, 1471 (5th Cir. 1993); <u>see</u> <u>also</u> <u>United States v. Navarro</u>, 169 F.3d 228, 231 (5th Cir. 1999).  In both these cases, this court applied the <u>Brown</u> factors and held that the consents to search purged the taint of any possible Fourth Amendment violation.  <u>See</u> <u>also</u> <u>Rawlings v. Kentucky</u>, <u>supra</u>.

engage in flagrant misconduct or exploit their violations. The Supreme Court bears out this calculus in <u>Rawlings v. Kentucky</u>, where the suspect confessed "after being in what was assumed to be an illegal detention for forty-five minutes. Applying the attenuation exception to the exclusionary rule, the Court emphasized the informal nature of the detention." <u>See</u> <u>Sheppard</u>, 901 F.2d at 1235, n.10 (summarizing <u>Rawlings</u>). The Court also pointed out that the officers there appeared to be acting in good faith and unaware that their conduct might violate the Fourth Amendment. <u>Rawlings</u>, 448 U.S. at 110-111, 100 S.Ct. at 2564. The Court concluded:

> . . . . the conduct of the police here does not rise to the level of conscious or flagrant misconduct requiring prophylactic exclusion of petitioner's statements.

<u>Rawlings</u>, <u>id</u>.

The majority concede that the officers' conduct here was hardly flagrant. On the contrary, they were almost surely following then-applicable Fifth Circuit law. They were not trying to "exploit" a Fourth Amendment violation when they questioned Hernandez and obtained her consent to search the suitcase. This "particularly" relevant factor should weigh heavily in favor of the government's position.

Finally, it seems that rather than there being no intervening circumstances,[4] the single circumstance that expressly

---

[4] Among such intervening circumstances are the giving of <u>Miranda</u> warnings, <u>Brown v. Illinois</u>, <u>supra</u>; and telling the suspect he

21

attenuates the illegal conduct from Hernandez's consent is the separateness of the two events. Unlike all the other cases where this court has suppressed evidence, Hernandez's consent was not precipitated by illegal detention or her awareness of any illegal conduct by the police. In no sense can it be concluded that her free will was "overborne" by the officer's previous conduct. Likewise, this court held that consent to search obtained from a person who was unaware of another person's involuntary consent was based on intervening circumstances. <u>United States v. Richard</u>, <u>supra</u>.

As the ultimate inquiry for the attenuation exception is whether the suspect consented as an independent act of free will, I fail to see how the majority find otherwise. Applying the exclusionary rule to overcome Hernandez's consent makes no sense here.

For these reasons, I would **REVERSE** the district court's judgment.

---

could refuse to consent, <u>Kelley</u>, <u>supra</u>.