**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 01-50832

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

VERSUS

DELPHINE LUSTER,

Defendant - Appellee.

Appeal from the United States District Court
for the Western District of Texas
(01-CR-5)

October 25, 2002

Before WIENER, EMILIO M. GARZA, and PARKER, Circuit Judges.

PER CURIAM: [*]

We must determine whether the district court erred by basing its decision to suppress cocaine seized by a Border patrol agent during a routine immigration checkpoint inspection on a determination that the agent extended his immigration stop to

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

search for drugs without reasonable suspicion of criminal activity. We vacate and remand.

## I.  Background.

On December 13, 2000, a Greyhound Bus entered the Sierra Blanca Immigration Checkpoint, east of El Paso on Interstate 10, for inspection.  Border Patrol agents opened its cargo bay and conducted an inspection, including the use of canines.  During that time, Border Patrol Agent Jade Woodruff entered the passenger area of the bus and proceeded down the aisle ascertaining nationality status and making occasional inquiries about illegal drugs.

Approaching the rear of the bus, he observed a blue duffel bag in the overhead rack but nobody sitting near it.  The United States ("the Government") asserts that his attention was drawn to the bag specifically because nobody was seated near it and that in his experience, passengers attempt to disassociate themselves from bags containing illegal drugs by placing them away from the area in which they are seated.

Agent Woodruff asked whose bag it was and the Appellee, Delphine Luster, identified it as hers.  The accounts of the parties are sharply divided at that point. The Government contends that Agent Woodruff asked for Luster's consent to look inside the bag and that she replied, "Sure, go ahead."  Luster asserts that she was never asked for nor granted consent to look in the bag. Instead, she contends that Woodruff manipulated or "squeezed" the

2

bag and then opened it without her consent.

Agent Woodruff testified that after Luster gave permission, she said, "Oh, it's just my bed sheets," which he thought to be an odd thing to be carrying in that manner. Inside the bag, Agent Woodruff found "insignificant pieces of linen" and, upon moving them, felt a hard bundle. His past experience made him believe that it was a likely package of illegal drugs.

He asked or told Luster to leave the bus and then had the bag subjected to a canine "sniff." Why he did so, given his assertion that Luster had given consent to search the bag, is unclear. The dog alerted and Border Patrol Agents then extracted a bundle of cocaine from the bag.

In the district court, Luster moved to suppress the evidence from the seizure. She argued that the stop of the bus was extended impermissibly because Woodruff had no "reasonable suspicion." Further, she asserted that Woodruff's alleged squeezing of the bag was illegal under *Bond v. United States*, 529 U.S. 334 (2000).

The district court ruled on August 9th, 2001, that Agent Woodruff did not have reasonable suspicion to extend the stop of the bus and make his inquiries of Luster. The court so ruled because the "totality of objective factors on which Agent Woodruff relied" were that he "noticed the blue duffel bag in the overhead bin, asked to who it belonged, and that the Defendant, sitting a few seats away, said that it belonged to her." *See United States*

3

*v. Luster*, No. P-01-CR-5, at 3 (W.D. Tex. Aug. 13, 2001). The court found that this set of facts did not support reasonable suspicion, which it held as required to extend the stop long enough for an inquiry. The court did not rule on the issue of whether Agent Woodruff obtained Luster's consent, nor on Luster's claim that Woodruff impermissibly manipulated the bag.

The Government appeals, largely on the basis of our opinion in *United States v. Machuca-Barrera*, 261 F.3d 425 (5th Cir. 2001), *rehear'g denied.*

## II.  Standard of Review.

When considering a ruling on a motion to suppress, we review questions of law *de novo* and factual findings for clear error. *United States v. Hernandez*, 279 F.3d 302, 306 (5th Cir. 2002); *United States v. Jones*, 234 F.3d 234, 239 (5th Cir. 2000). A finding is clearly erroneous if the court is left with the "definite and firm conviction that a mistake as been committed." *Hernandez*, 279 F.3d at 306 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). Additionally, the court views the evidence in the light most favorable to the party that prevailed in the district court. *Hernandez*, 279 F.3d at 306; *Jones*, 234 F.3d at 239.  The district court may be affirmed on any basis established by the record. *United States v. McSween*, 53 F.3d 684, 687 n.3 (5th Cir.), *cert. denied*, 516 U.S. 874 (1995).

## III.  Analysis.

4

Immigration checkpoints for the purpose of making suspicionless stops to determine nationality or immigration status are constitutional. *United States v. Martinez-Fuerte*, 428 U.S. 543, 566 (1976). Searches or further detention beyond this purpose require consent or probable cause. *Id*. at 567. The validity of suspicionless stops at a checkpoint depends on the "programmatic purpose" of the checkpoint. *City of Indianapolis v. Edmond*, 531 U.S. 32, 46 (2000). Checkpoints created to control "ordinary criminal wrongdoing," *id.* at 41, or to interdict drugs, *id.* at 47–48, are invalid programmatic purposes. An immigration stop is a valid programmatic purpose for such a suspicionless stop. *Machuca-Barrera*, 261 F.3d at 433.

Luster continues to argue on appeal that Agent Woodruff's request for consent to search her bag exceeded the scope of the immigration search and impermissibly extended its duration. The Government counters that Agent Woodruff's actions were within the durational scope of the immigration stop under *Machuca-Barrera*. *Id*. at 432. The issue, however, is not the scope or duration of the search but whether a law enforcement officer may ask an individual for consent to answer questions or submit to a consensual search, without a need for reasonable suspicion or probable cause.

"[L]aw enforcement officers are always free to question individuals if in doing so the questions do not effect a seizure."

5

*Id*. (citing *United States v. Shabazz*, 993 F.2d 431 (5th Cir. 1993)). The United States Supreme Court has addressed this issue in its latest term. Where bus passengers are asked, without coercion, by law enforcement agents for voluntary consent and are questioned or searched by consent, the passengers are not "seized" under the Fourth Amendment. *United States v. Drayton*, \_\_\_U.S.\_\_\_, 122 S. Ct. 2105, 2110 (2002)(where passengers are free to participate or to leave, there is no coercion or seizure when plainclothes officers showing badges and carrying concealed weapons request passengers for consensual questioning and searches). "Police officers act in full accord with the law when they ask citizens for consent." *Id*. at 2114. Whether such consent has been granted is determined by the totality of the circumstances. *Id*. at 2113-14.[1]

In this case, Luster and the other passengers on the bus may have been required to submit to an immigration stop, but there is no assertion of being coerced into consenting to answering unrelated questions or submitting to a baggage search. Luster admits that Agent Woodruff asked several other passengers for permission to search belongings; such a request dispels the notion

---

[1] We note that our opinion in *Machuca-Barrera*, which interprets scope of permissible questioning and inspection in terms of duration consistent with its programmatic purpose, *see* 261 F.3d at 432, may be at odds with *Drayton's* "totality of the circumstances" approach to determining consent. We need not resolve that aspect of *Machuca-Barrera* in this examination of officer-requested consent, however.

6

that a passenger's consent, where granted, was other than voluntary. *Id*. There was no requirement for Agent Woodruff to act under reasonable suspicion or to obtain probable cause to ask for such consent. *Id*. At issue, however, is whether Luster actually consented to the search of her bag. The district court did not make a determination on that point when it ruled that Agent Woodruff had impermissibly extended the inspection to ask consent without reasonable suspicion. The answer to that question will, in part, determine whether the cocaine found in Luster's bag was properly seized or excluded.

The district court should consider Luster's contention that Agent Woodruff did not obtain her consent but simply ordered her off of the bus to conduct a canine "sniff," as well as her contention that he squeezed or manipulated her bag before opening it or obtaining any permission. When a bus passenger places a soft-sided bag in an overhead bin, she expects that it may be moved or touched by other passengers or employees. She does not expect that those others will, as a matter of course, feel the bag in an exploratory manner. For a law enforcement agent to do so is a violation of that expectation and of the Fourth Amendment, and is therefore impermissible. *See Bond*, 529 U.S. at 338-39. The district court's order does address, with some concern, Luster's assertion that Woodruff squeezed the bag, noting that *Bond* invalidates the Border Patrol's practice of "squeeze and sniff"

7

searches on board a bus.  The court did not make a credibility judgment as to whether the squeeze actually happened, however, but merely offered the observation as a caution.  Making such a determination may provide Luster with a defense to a finding of having granted consent.

## IV.  Conclusion.

For the reasons stated herein, we VACATE the order of the district court and REMAND for a determination of whether consent had been granted for the bag search and whether Agent Woodruff squeezed or manipulated it beforehand.