# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 7, 2021

Lyle W. Cayce
Clerk

No. 20-30528

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

LEONARD MORRISON,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CR-36-6

Before KING, JONES, and COSTA, *Circuit Judges*.

PER CURIAM:*

The appellant, Leonard Morrison, appeals for a second time from the judgment entered against him following his conviction under 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm. Morrison was convicted at trial after the district court denied his motion to suppress evidence found by officers in his home. Morrison appealed, challenging, *inter*

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-30528

*alia*, the denial of his motion to suppress. We remanded to the district court to resolve conflicting testimony as to whether the officers had consent to enter Morrison's home. On remand, the district court denied Morrison's motion to suppress, crediting law-enforcement officers' testimony that supported finding consent. Morrison again challenges the denial of his motion to suppress as well as the application of a sentencing enhancement under the Armed Career Criminal Act. For the reasons that follow, we AFFIRM.

## I.

Following a jury trial, Leonard Morrison was convicted of being a felon in possession of a firearm. Before trial, however, Morrison filed a motion to suppress evidence obtained during a warrantless search of his home, claiming that the search was not consensual. The district court held a suppression hearing at which three witnesses testified: Louisiana State Trooper Rohn Bordelon, Jefferson Parish Sheriff's Office Detective David Biondolillo (together with Bordelon, the "officers"), and Morrison's girlfriend and the mother of his children, Shlonda Jupiter. After the hearing, the district court denied the motion on the basis that Jupiter gave the officers implied consent to enter the home and that Morrison voluntarily gave written consent to the search.

At sentencing, the district court overruled Morrison's objection to an enhanced sentence under the Armed Career Criminal Act (the "ACCA"), varied below the guidelines range of 235 to 293 months of imprisonment, and sentenced Morrison to the statutory minimum of 180 months of imprisonment followed by five years of supervised release.

Morrison then brought his first appeal, challenging the denial of his suppression motion and the ACCA sentencing enhancement. We remanded to the district court to resolve the conflicting testimony about whether

Jupiter implicitly consented to the officers' entry. *United States v. Staggers*, 961 F.3d 745, 757–60 (5th Cir. 2020). On remand, the district court explicitly "credit[ed] the testimony of the officers that Jupiter impliedly consented to their entry" into Morrison's home and again denied Morrison's suppression motion. Morrison timely appealed a second time, challenging the denial of his suppression motion and the ACCA sentencing enhancement.

## II.

When reviewing the denial of a motion to suppress, we review factual findings for clear error and the constitutionality of law enforcement action de novo. *United States v. Beene*, 818 F.3d 157, 161 (5th Cir. 2016). Similarly, we review the district court's application of the ACCA enhancement de novo and its findings of fact for clear error. *United States v. Constante*, 544 F.3d 584, 585 (5th Cir. 2008).

"Factual findings are clearly erroneous only if a review of the record leaves this [c]ourt with a 'definite and firm conviction that a mistake has been committed.'" *United States v. Hearn*, 563 F.3d 95, 101 (5th Cir. 2009) (quoting *United States v. Hernandez*, 279 F.3d 302, 306 (5th Cir. 2002)). We must view the evidence in the light most favorable to the prevailing party, i.e. the government. *See United States v. Pack*, 612 F.3d 341, 347 (5th Cir. 2010) *modified on other grounds on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010). Finally, the clearly erroneous standard is particularly deferential where the "denial of a suppression motion is based on live oral testimony . . . because the judge had the opportunity to observe the demeanor of the witnesses." *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005) (quoting *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005)).

## III.

In challenging the denial of his motion to suppress a second time, Morrison argues that the district court clearly erred when it credited the

officers' testimony and determined that the officers' warrantless entry into his home was consensual.

"Under the Fourth Amendment, a warrantless search of a person's home is presumptively unreasonable, and it is the government's burden to bring the search within an exception to the warrant requirement." *United States v. Aguirre*, 664 F.3d 606, 610 (5th Cir. 2011). But the government does not need a warrant if it receives: (i) consent; (ii) that is voluntarily given; (iii) by someone with actual or apparent authority; and (iv) the search does not exceed the scope of the consent received. *United States v. Freeman*, 482 F.3d 829, 831–32 (5th Cir. 2007). "All four issues are factual," and so, here, we review the district court's determination regarding consent for clear error.[1] *Id.* at 832.

Consent to a search does not need to be explicit and may be inferred from actions that reasonably communicate consent. *Staggers*, 961 F.3d at 757. Indeed, we have previously noted that motioning to come in (and similar gestures) can constitute implied consent. *See United State v. Lewis*, 476 F.3d 369, 381 (5th Cir. 2007). At bottom, whether consent was given is analyzed under the totality of the circumstances. *Freeman*, 482 F.3d at 831–32; *see also United States v. Griffin*, 530 F.2d 739, 742–43 & n.3 (7th Cir. 1976).

To start, we briefly recap our previous decision on Morrison's first challenge to the denial of the suppression motion. There, we remanded to the district court for two reasons. First, the district court's reasoning that Jupiter's failure to object to the officers' entry constituted implied consent

---

[1] In his first appeal, Morrison also challenged the voluntariness of the consent and whether Jupiter had authority to consent to the officers' entry. We rejected each of these arguments. *Staggers*, 961 F.3d at 759–60. To that end, the only question before us now regarding the four requirements of the warrant exception is whether Jupiter impliedly consented to the officers' entry.

was incorrect. We explained that such a failure to object may only constitute consent following a request for consent from the officers. *Staggers*, 961 F.3d at 757–58. Second, the district court avoided weighing the conflicting testimony between the officers and Jupiter.[2] *Id.* at 758–59. Instead, the district court "based its decision on matters about which Jupiter and the law-enforcement officers agreed." *Id.* at 758. In doing so, the district court did not make the requisite finding as to consent, and we remanded for further proceedings. *See id.* at 758–59. On remand, however, the district court made that very finding.

Specifically, the district court "credit[ed] the testimony of the officers that Jupiter impliedly consented to their entry into . . . [Morrison's] home by stepping back and opening the door to allow them in after they asked to speak to Morrison."

To that end, the officers' testimony established the following:

As part of a drug trafficking investigation, officers conducted a knock-and-talk interview at Morrison's home. Following the officers' knock on the door, Jupiter opened the door and asked the officers "what was going on," to which the officers introduced themselves and asked if Morrison "was there." At that point, as one officer recounted it, "the door was partially open, and [Jupiter] stepped back and opened the door some more." Similarly, the other officer described the scene as Jupiter "moving out the way, her opening the door allowing us in." The officers then entered Morrison's home and spoke to him before Morrison led them to the master bedroom. At that point, Morrison waived his *Miranda* rights and provided written consent to a search of his home.

---

[2] Plainly, the officers contended that Jupiter allowed them inside, while Jupiter testified that the officers pushed their way inside.

No. 20-30528

Additionally, the district court chose to credit jailhouse telephone calls that Morrison submitted on remand where Jupiter expressed remorse for opening the door to the officers by telling Morrison that she was "mad" at herself.

Against this backdrop, the district court concluded that the totality of the circumstances supported the officers' version of events. And this comports with other instances where courts have found implied consent from a similar gesture. *See Lewis*, 476 F.3d at 381 (finding consent where an occupant motioned to the officers to come inside a hotel room while the occupant looked for identification); *see also Griffin*, 530 F.2d at 742–43 (finding consent where the defendant stepped back into the apartment and left the door partially open); *United States v. Turbyfill*, 525 F.2d 57, 59 (8th Cir. 1975) (finding implied consent where an occupant of the house opened the door and stepped back to let the officers enter); *United States v. Smith*, 155 F. App'x 747, 750 (5th Cir. 2005) ("[T]he district court did not err in concluding that the officers did not act unreasonably in interpreting [a co-defendant's] actions—pulling the door open wider and stepping back into the suite—as an invitation to enter the room immediately.").

Viewing the facts in the light most favorable to the government, *Pack*, 612 F.3d at 347, the district court's finding of implied consent was not clearly erroneous.

## IV.

We next turn to Morrison's challenge to the ACCA enhancement. According to the presentence report (the "PSR"), Morrison had three prior convictions for serious drug offenses, which would trigger the ACCA enhancement: (1) a 2000 Louisiana conviction for possession with intent to distribute marijuana, (2) a 2002 Louisiana conviction for possession with intent to distribute cocaine, and (3) a 2006 Louisiana conviction for

attempted possession with intent to distribute MDMA (ecstasy) (the "MDMA offense"). Morrison objected below, as he does on appeal, to the ACCA enhancement, arguing that he was not the defendant who was charged with or convicted of the MDMA offense. The district court overruled the objection.

Whether Morrison was the defendant convicted of the MDMA offense is a factual question that we review for clear error.[3] *See United States v. Ortega-Calderon*, 814 F.3d 757, 760 (5th Cir. 2016) (reviewing for clear error a challenge to "the reliability of the evidence—the two documents used to prove the fact of [the defendant's] 2003 conviction, and as a result, enhance his sentence"); *United States v. Gomez-Alvarez*, 781 F.3d 787, 796–97 (5th Cir. 2015) (reviewing for clear error the conclusion that the defendant was the person who was named in a state-court complaint and abstract of judgment for purposes of a sentencing enhancement). And "[a] factual finding is not clearly erroneous if it is plausible in light of the record as a whole." *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013). In other words, we will find clear error "only if a review of the record results in a 'definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011)). As we explain below, we find no such clear error here.

The ACCA subjects a defendant convicted under 18 U.S.C. § 922(g) to a minimum sentence of fifteen years if he has three prior convictions for "a violent felony or a serious drug offense, or both, committed on occasions

---

[3] On appeal, Morrison argues for de novo review. And certainly, we review the application of the ACCA enhancement de novo. *Constante*, 544 F.3d at 585. But Morrison's argument that the government did not submit sufficient and reliable evidence to prove that he was the defendant who committed the MDMA offense is a factual question that we review for clear error. *Id.*

different from one another." 18 U.S.C. § 924(e)(1). To establish that an ACCA enhancement is proper, the government bears the initial burden of establishing the defendant's prior convictions by a preponderance of the evidence. *See Constante*, 544 F.3d at 587; *United States v. Williams*, 20 F.3d 125, 133 n.8 (5th Cir. 1994). Once the government has proved the predicate convictions, it is then the defendant's burden to disprove the basis of an enhancement by a preponderance of the evidence. *See Constante*, 544 F.3d at 587; *see also United States v. Owens*, 753 F. App'x 209, 213 (5th Cir. 2013).

In this case, state-court records available from the 2006 Louisiana conviction for the MDMA offense included: (1) a booking sheet; (2) a bill of information; (3) a plea agreement; and (4) a minute entry from the re-arraignment and sentencing proceeding. Morrison argues that these state-court records—either "standing alone" or in light of the discrepancies they reveal—are insufficient to establish his identity as the perpetrator of the MDMA offense. These arguments are unavailing.

First, contrary to Morrison's contention, the state-court records are reliable evidence that can be used to establish his identity as the perpetrator of the MDMA offense, notwithstanding the fact that they do not contain any fingerprint or photographic evidence of his identity. *See United States v. Boaz*, 598 F.3d 936, 937 (8th Cir. 2010) (explaining that court records can be used to establish the identity of the perpetrator of an offense and that the government was not required to present fingerprint evidence to satisfy its burden of proof under § 924(e)); *see also United States v. Gonzalez*, 625 F.3d 824, 827 (5th Cir. 2010) (explaining that even, under the higher standard of "beyond a reasonable doubt," physical evidence is not required for proving a prior conviction). Second, although Morrison emphasizes certain

discrepancies in the state-court records,[4] he ignores the significant consistencies between the state-court records for the MDMA offense and the records for the other two Louisiana drug convictions.

For example, the state-court records for the MDMA offense as well as those for the other two convictions all state that Morrison's birthday is July 15, 1982, and list the same street address for Morrison. Additionally, the physical description of Morrison across all the state-court records for the three predicate convictions is the same.

As the government proved by a preponderance of the evidence that Morrison committed the MDMA offense, it was then Morrison's burden to disprove this basis for the enhancement by a preponderance of the evidence. Morrison has not done so—instead framing his arguments as whether the government met its burden. *See Constante*, 544 F.3d at 587; *see also Owens*, 753 F. App'x at 213.

To that end, the district court's finding that Morrison is the defendant who committed the MDMA offense is plausible in light of the record as a whole. And so, we do not find clear error.

## V.

For the foregoing reasons, we AFFIRM.

---

[4] For example, Morrison contends that the "the social security number written on the certified plea agreement [for the MDMA offense] . . . did not match [his] social security number." He also contends that "the booking sheet . . . inaccurately stated [his] father's name, and it did not mention [his] tattoo" and that the plea agreement "stated that the defendant's probation was 'to be transferred to Orleans Parish'—a parish in which [he] never had a case and where he did not live."