**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Shafii SHAIBU, Defendant–Appellant.**

**No. 88–5367.**

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 5, 1989.*

Decided Feb. 14, 1990.

As Amended Dec. 7, 1990.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Dennis J. Landin, Sr. Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

John F. Walsh, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before BROWNING, FERGUSON and REINHARDT, Circuit Judges.

FERGUSON, Circuit Judge:

The defendant appeals from the District Court's denial of his Motion to Suppress Evidence. California police officers searched his apartment after entering without a warrant. The police obtained evidence and statements from him which were used to support charges of bank fraud. Shafii Shaibu asserts all evidence and statements obtained during the search should be suppressed on two grounds: (1) the warrantless entry into his apartment and ensuing search violated the Fourth Amendment; and (2) the police conducted a custodial interrogation without the warnings required under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We agree that the warrantless entry into Shaibu's apartment violated the Fourth Amendment, and do not reach the issue of custodial interrogation.

I.

On December 11, 1987, four California police officers went to the apartment complex where Shaibu lived. They had neither a search warrant nor an arrest warrant. The officers were looking for another man, Idahosa Bazuaye, who was a suspect in an ongoing scheme of fraudulent withdrawals from Security Pacific National Bank's Automatic Teller Machines. The officers believed that Bazuaye lived in Apartment 115 at 14019 Cerise, in Hawthorne, California. In fact, that was not Bazuaye's address, but Shaibu's. Both Shaibu and Bazuaye are black Africans, Nigerian nationals.

The apartment complex had a front gate and buzzer system. The police pressed the buzzer for apartment 115 and heard an accented voice ask who was there. The officers did not respond. The gate release sounded, and they entered the complex. They walked down the hallway onto which apartment 115 opened. Shaibu had stepped out of his apartment, leaving the door open, and initially began walking toward the officers in the hallway. One of the officers, Officer McClure, identified himself as a policeman, and asked Shaibu if Basuaye was inside the apartment. Officer McClure described the exchange in the hallway as follows:

[I]t was rather ... quick occurrences. I think I asked him if Idahosa Basuaye was inside, and he [Shaibu] had turned around and started walking to the apartment, and we followed him into the apartment.

According to the District Court's findings of fact, soon after Officer McClure identified himself, Shaibu walked back "into the apartment, leaving the door open as the detectives followed him inside. Shaibu did not ask them to wait outside, to leave, or to produce a search warrant." The officers did not ask permission to enter Shaibu's apartment nor state their intention to do so, but simply followed Shaibu through the open door. The District Court found that Shaibu's failure to object created an "implicit invitation" to enter and search the apartment.

Once inside, the officers asked Shaibu for identification. As Shaibu opened his wallet, Officer McClure seized the wallet and removed a Security Pacific ATM card. After asking Shaibu questions about the ATM card, a second officer asked Shaibu if

he could "look around the apartment to see whether Bazuaye was there." Shaibu answered, "Sure, go ahead." Neither the government nor the District Court relied on this statement to establish Shaibu's consent to search; rather this explicit statement was found to show that the scope of consent established by the initial "implicit invitation" was never limited by any objection.

The officers did not find Bazuaye, but did find evidence of bank fraud. Shaibu subsequently was indicted and entered a conditional guilty plea, preserving his right to appeal the District Court's denial of his Motion to Suppress, to one count of bank fraud under 18 U.S.C. § 1344. He was sentenced to three years probation and restitution of $300, and now timely appeals denial of the Motion to Suppress.

In its ruling, the District Court determined that the evidence and statements obtained after the warrantless entry were admissible because the entry did not violate the Fourth Amendment. Our review focuses on the District Court's belief that Shaibu consented to the detectives' entrance to his apartment "by implicit invitation." The District Court states, "[u]nder all the circumstances of this case, the court infers consent from the cooperative attitude and conduct of the defendant ... Shaibu cooperated by responding to McClure's questions and leaving his apartment door open as they walked inside. He did not ask the detectives to wait outside, leave or produce a warrant; nor did he otherwise object in any way to the officers' presence inside the apartment."

## II. *Standard of Review*

■ A district court's finding that a person consented to a search is generally treated as a factual determination, reversible only if clearly erroneous. *See United States v. Hunt*, 893 F.2d 1028, 1032 (9th Cir.1990); *United States v. Gilbert*, 774 F.2d 962, 964 (9th Cir.1985).

■ There is at least one exception to this principle, however. When we are determining whether as a general rule certain types of actions give rise to an inference of consent, de novo review is appropriate. *See United States v. Pulido–Baquerizo*, 800 F.2d 899, 901 (9th Cir.1986) (reviewing de novo the district court's determination that airline passengers who consent to x-ray surveillance of their luggage do not impliedly consent to visual inspection of their luggage). The *Pulido–Baquerizo* exception is justified by the fact that the district court's ability to draw inferences from first-hand observation of testimony, demeanor and physical evidence places the district court in no better position than the appeals court when it comes to formulating a general rule applicable to a wide class of cases.

In this case, it could be argued that we must decide as a matter of law whether merely retreating into one's home while being followed by a police officer can constitute consent to a police entry. The determination we reach here that such conduct, standing alone, is insufficient is based upon the principle that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 682, 5 L.Ed.2d 734 (1961). Thus, it might be argued that this case calls for the formulation of a general rule, and therefore de novo review is appropriate. However we need not decide the question of what standard of review is applicable, for, whichever standard we apply the result is the same—we are required to reverse.

## III.

■ A warrantless search of a house is per se unreasonable, *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980), and absent exigency or consent, warrantless entry into the home is impermissible under the Fourth Amendment. *Steagald v. United States*, 451 U.S. 204, 211, 101 S.Ct. 1642, 1647, 68 L.Ed.2d 38 (1981); *United States v. Alfonso*, 759 F.2d 728, 742 (9th Cir.1985). Evidence recovered following an illegal entry of the home is inadmissible and must be suppressed. *Wong Sun v. United States*,

371 U.S. 471, 484–87, 83 S.Ct. 407, 415–17, 9 L.Ed.2d 441 (1963).

 In the present case, the government admits the lack of a warrant or exceptional circumstances, and relies entirely on consent for the legality of the entry and search. "The existence of consent to a search is not lightly to be inferred," *United States v. Patacchia*, 602 F.2d 218, 219 (9th Cir.1979), and the government "always bears the burden of proof to establish the existence of effective consent." *United States v. Impink*, 728 F.2d 1228, 1232 (9th Cir.1984); *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983); *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973); *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968). That burden is heaviest when consent would be inferred to enter and search a home, for protection of the privacy of the home

> finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their ... houses ... shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 [81 S.Ct. 679, 682]. In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house.

*Payton v. New York*, 445 U.S. at 589–90, 100 S.Ct. at 1381–82.

 Judicial concern to protect the sanctity of the home is so elevated that free and voluntary consent cannot be found by a showing of mere acquiescence to a claim of lawful authority. *Bumper v. North Carolina*, 391 U.S. at 548–49, 88 S.Ct. at 1791–92. In examining whether a person's invitation to the police "to go right ahead and search the whole place," could, in context, be considered effective consent, this court established the following burden for the government:

The government must prove that consent was given. It must show that there was no duress or coercion, express or implied. The consent must be "unequivocal and specific" and "freely and intelligently given". There must be convincing evidence that defendant has waived his rights. There must be clear and positive testimony. " 'Courts indulge every reasonable presumption against waiver' of fundamental constitutional rights." Coercion is implicit in situations where consent is obtained under color of the badge, and the government must show that there was no coercion in fact.

*United States v. Page*, 302 F.2d 81, 83–84 (9th Cir.1962) (footnotes omitted).

 Although this court has acknowledged that "[u]nder some very limited circumstances ... courts will infer consent from the cooperative attitude of a defendant," *United States v. Impink*, 728 F.2d at 1232, in fact this court has never sanctioned entry to the home based on inferred consent. *Id.* at 1233–34; *United States v. Patacchia*, 602 F.2d at 219; *cf. United States v. Gilbert*, 774 F.2d 962, 964 (9th Cir.1985) (court uses term "implied consent" in different sense, holding that detained defendant's affirmative request to police to go to her bedroom to get her clothes "necessarily implied consent to enter the bedroom in which ... the clothing was located.").

The District Court relied on *United States v. Griffin*, 530 F.2d 739 (7th Cir. 1976), to conclude that it could infer consent to enter the home from the conduct of the defendant. In *Griffin*, the police knocked on the door of an apartment where the defendant Griffin, and a co-defendant, Russell, lived. The police requested admission twice. The first time the police knocked, Russell came to the door and opened it. The police made a "request to be admitted into the apartment." Russell stated he was busy and " 'slammed' the door in their faces." *Id.* at 741. Soon thereafter the police knocked again, stated that

> they had reason to believe a burglary was in progress inside the apartment,

and again asked to be admitted. Russell stepped back into the apartment, leaving the door partially open. Neither officer later recalled any words spoken by Russell during these moments. The officers entered the apartment and followed Russell down a short hallway into the living room.

*Id.*

Largely by comparing Russell's initial slamming of the door to his subsequent leaving it open and allowing the police to follow him inside, the Seventh Circuit concluded that Russell had shown consent to the officers' second request to enter. *Id.* at 743.

*Griffin* is dissimilar from the present case in two fundamentally significant respects. First, in *Griffin* the police *requested entry*, in Shaibu's case they did not. Second, in *Griffin* the Seventh Circuit interpreted the acts of opening the door and stepping back as responding affirmatively to a clear request by the police to enter the home. In Shaibu's case, no affirmative acts took place. He opened the door not to let the police enter, but only for himself to step out of the apartment to meet visitors outside rather than inside. There is no contention that the police expressly or impliedly asked consent to enter nor that Shaibu expressly granted or refused entry. It is one thing to infer consent from actions responding to a police request. It is quite another to sanction the police walking in to a person's home without stopping at the door to ask permission. *Griffin* provides no support for such a license. To infer consent in this case is only a conjecture and would exceed the scope of any recognized exception to the Fourth Amendment's bar to warrantless entry of the home.

In "knock notice" cases when the police have a legal prerogative, such as a warrant or probable cause, to enter the home without consent, an open door has sometimes been construed as reducing the police's obligation to announce themselves and request entry before "breaking the door" of a dwelling. *United States v. Valenzuela*, 596 F.2d 1361, 1365–66 (9th Cir.1979); *Ng Pui Yu v. United States*, 352 F.2d 626,

629–30 (9th Cir.1965); *Steagald v. United States*, 451 U.S. at 217 n. 11, 101 S.Ct. at 1650 n. 11 (1981); *but cf. Keiningham v. United States*, 287 F.2d 126, 130 (D.C.Cir. 1960) (holding that statutory requirement to announce purpose and request entry applies whenever police "enter without permission," cited with apparent approval in *Ker v. California*, 374 U.S. 23, 38, 83 S.Ct. 1623, 1632, 10 L.Ed.2d 726 (1963), and in *Sabbath v. United States*, 391 U.S. 585, 590, 88 S.Ct. 1755, 1758, 20 L.Ed.2d 828 (1968)). Although an open door may thus affect the range of permissible action for police possessing a warrant, there is no authority that an open door gives police legal grounds to enter the home without explicit request when they infer consent from mere acquiescence. *United States v. Impink*, 728 F.2d at 1233 n. 3 (in implied consent cases, "the suspect himself takes some action" showing "unequivocal and specific" consent).

We do not expect others to walk in to our homes, even if the door is open, without first requesting permission to enter. That the police would so enter, without request, creates an impression of authority to do so. In light of the standard in this Circuit, that "[c]oercion is implicit in situations where consent is obtained under color of the badge," *United States v. Page*, 302 F.2d at 84, we interpret failure to object to the police officer's thrusting himself into Shaibu's apartment as more likely suggesting submission to authority than implied or voluntary consent. *Johnson v. United States*, 333 U.S. 10, 13, 68 S.Ct. 367, 368, 92 L.Ed. 436 (1948). Such submission is not effective consent. *Id.; Amos v. United States*, 255 U.S. 313, 317, 41 S.Ct. 266, 268, 65 L.Ed. 654 (1921); *United States v. Winsor*, 846 F.2d 1569, 1573 n. 3 (9th Cir.1988).

Even if there was not implicit coercion in fact here, the government may not show consent to enter from the defendant's failure to object to the entry. To do so would be to justify entry by consent and consent by entry. "This will not do." *Johnson v. United States*, 333 U.S. at 17, 68 S.Ct. at 370. We must not shift the burden from the government—to show "unequivocal and

specific" consent—to the defendant, who would have to prove unequivocal and specific objection to a police entry, or be found to have given implied consent.

We hold that in the absence of a specific request by police for permission to enter a home, a defendant's failure to object to such entry is not sufficient to establish free and voluntary consent. We will not infer both the request and the consent.

The police, in justifying their warrantless entry into Mr. Shaibu's apartment, relied solely on implied consent, which we find could not be inferred. All evidence acquired after the entry must therefore be suppressed. *Wong Sun v. United States*, 371 U.S. at 484–86, 83 S.Ct. at 415–17; *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). The District Court is REVERSED.