928 So.2d 423 (2006)
David A. INGRAM, Appellant,
v.
STATE of Florida, Appellee.
No. 1D04-4947.
District Court of Appeal of Florida, First District.
April 27, 2006.
*424 Michael Ufferman, of Michael Ufferman Law Firm, P.A., Tallahassee, for Appellant.
*425 Charlie Crist, Attorney General; Bryan Jordan, Assistant Attorney General, Tallahassee, for Appellee.
BROWNING, J.
David A. Ingram (Appellant) was charged with one count of possessing or aiding and abetting the possession of listed precursor chemicals (pseudoephedrine and Red Devil lye) with the intent to manufacture a controlled substance (methamphetamine), a second-degree felony in violation of sections 893.149 & 777.011, Florida Statutes (2004); and one count of possession of drug paraphernalia, a first-degree misdemeanor in violation of section 893.147(1)(b), Florida Statutes (2004). Victor Brooks Wilson, a passenger in Appellant's vehicle, was named in the same information and was charged with the same offenses as Appellant, plus one count of actual or constructive possession of a controlled substance (methamphetamine), a third-degree felony in violation of section 893.13(6)(a), Florida Statutes (2004). The alleged offenses occurred on April 21, 2004. After the trial court denied Appellant's legally dispositive motion to suppress evidence, he entered a plea of no contest to both counts, reserving the right to appeal the denial of his motion to suppress. He was sentenced to three years' probation, conditioned upon his serving the first nine months in the county jail. Appellant contends that the trial court reversibly erred in denying his motion to suppress. Concluding that the trial court reached the right result, we affirm the convictions and sentences. See Robertson v. State, 829 So.2d 901, 906-07 & n. 2 (Fla.2002) (describing the "tipsy coachman" principle of appellate law); Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644-45 (Fla.1999).
The motion to suppress alleged that after Sergeant Johnson stopped Appellant's vehicle (the validity of which is unchallenged), the highway patrolman performed an illegal seizure and search of an item retrieved from Appellant's passenger, which led to the illegal arrest of the passenger, which was followed by an illegal search of the interior compartment of Appellant's vehicle, and which culminated in Appellant's arrest. Appellant sought to suppress the items found during the search. The State asserted that Appellant lacked standing to challenge the trooper's actions, absent any reasonable expectation of privacy in the contents of his passenger's pockets. Defense counsel argued that if an owner's vehicle is stopped, then a passenger also has standing to challenge the stop. Counsel argued that the converse is true too, so that Appellant had standing to challenge the search of his passenger. After the trial court delayed ruling on the question of Appellant's standing, the State presented its witness.
Sergeant Johnson, a 21-year employee of the Florida Highway Patrol, testified as follows regarding the events that led to the searches. On April 21, 2004, he was patrolling State Road 73 when he observed an approaching 4-door Ford pickup truck weaving within its own lane. As the trooper turned around, he saw the truck run completely off the road. He initiated a traffic stop and observed two men inside the truck. Appellant was the driver; Victor Brooks Wilson was the passenger. As the trooper approached the vehicle, he observed the two occupants moving around and apparently trying to conceal something in the center console. The passenger was looking back at the trooper through the rear glass of the truck.
When Sergeant Johnson asked Appellant to get out of the truck and produce his driver's license and vehicle registration, Appellant seemed extremely nervous. In fact, once he stepped to the rear of the vehicle, Appellant had to hold on to the *426 tailgate to keep from falling. Although Appellant did not smell like alcohol, the trooper noticed Appellant had watery and bloodshot eyes, pinpoint pupils, and slurred speech. Additionally, the trooper testified he had observed white powder around Appellant's nostril. He suspected that Appellant might be under the influence of some type of narcotic. Appellant was asked to remain standing behind the tailgate so the trooper could speak to the passenger.
As Sergeant Johnson approached the passenger's side of the truck, he became suspicious because "Mr. Brooks" [sic] was sitting in the front seat with his hand down inside the front of his pants. Simultaneously, the passenger appeared to be trying to observe what was happening through the rear window of the truck. When he was asked for identification, the very nervous passenger asked if he could step outside the vehicle. As the passenger exited the truck and patted himself down looking unsuccessfully for an I.D., the trooper noticed a small, round bulge in the passenger's pants pocket. When the trooper inquired about the nature of the object, the passenger reached into his pocket and removed a very old glass Carmex lip balm jar with a metal cap or lid on it. The closed container was about the size of a quarter or half-dollar. From his extensive training and experience, Trooper Johnson knew that Carmex containers are very useful and popular among substance abusers for concealing cocaine, marijuana, and crystal methamphetamines because the glass jar will not absorb the product stored in it. When the passenger removed the Carmex container, he held it out in his open palm as if intending to present it to the trooper. When the trooper asked what was inside the container, the passenger said nothing; when the trooper asked if he could look inside it, the passenger held out the container even closer to the trooper. Trooper Johnson received the Carmex jar from the passenger, shook it, and detected something loose inside, although he knew that lip balm "doesn't shake." The trooper then unscrewed the lid and observed a white, powdery crystal substance that (given his training and experience) looked like crystal methamphetamine. He arrested the passenger and handcuffed him, left hand to left hand, to Appellant to prevent their escaping.
Sergeant Johnson then searched the inside compartment of the vehicle where the passenger had sat. The search revealed a Benzomatic butane lighter and numerous (about 150) match striker plates, i.e., (according to the trooper) more than would be used by a typical smoker, scattered in the open center console. The trooper also found two ordinary prescription pill bottles (bearing Appellant's name and indicating they both contained Xanax) in the center console. Without picking up or opening the containers, the trooper could see that they contained different types of pills. Upon opening one pill container, he saw what appeared to be a small, round pill, which he believed was Xanax. The second pill container had three different types of pills that were different from the pill in the first bottle. Trooper Johnson arrested Appellant for possession of prescription medicine based on the non-Xanax pills.
The trooper later found some razors or straight razor blades underneath other items in the open center overhead console. Each razor blade appeared to have red phosphorus from the striker plates on it. Most of the items recovered during the initial search were in plain view. After a back-up officer arrived, Appellant and the passenger were placed in separate patrol vehicles. A more thorough search of the back of Appellant's truck revealed a set of clothes, underneath which Trooper Johnson found a vinyl bag believed to have *427 been used in the manufacture of "crystal meth." The trooper testified that the vinyl bag had a multi-layered, clear liquid in a plastic bottle that appeared to be "meth oil." The case contained Red Devil lye, glass Pyrex bowls and jars, some unknown white substance, and 37 packs of 60-milligram pseudoephedrine pills, which are a common product of the manufacture of methamphetamine.
After finding these items inside the truck, Sergeant Johnson called a deputy from the Jackson County Drug Task Force, who completed the search and inventory. Appellant and the passenger were taken to the sheriff's office, where they were read their Miranda rights and were interviewed separately. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The passenger admitted possession of the recovered items and the manufacture of methamphetamines with Appellant at the latter's residence. Using that information, the authorities secured a search warrant for Appellant's residence.
After Trooper Johnson testified, the attorneys argued the motion to suppress. Defense counsel asserted that the trooper lacked authority to seize and open the Carmex container, so that the subsequent searches of the passenger and the interior compartment of the truck were unauthorized as well. After challenging Appellant's standing, the State argued, first, that the trooper's observation of Appellant's erratic driving and his demeanor and appearance afforded probable cause to arrest Appellant for reckless driving or for driving under the influence. The prosecutor contended that because probable cause existed to arrest anyone in the vehicle, law enforcement could properly search the occupants and the vehicle pursuant to New York v. Belton, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Second, the State argued that after the trooper asked what was in the small, round container in Appellant's pants pocket, Appellant voluntarily consented non-verbally to the search by removing the item from his pocket and holding it out in his open palm as if presenting it to the trooper. The trial court ruled that Appellant had standing to challenge the evidence taken during the search. The motion to suppress was denied.
First, we address the threshold issue of whether Appellant had standing to challenge the seizure and search of evidence allegedly in violation of the Fourth Amendment. This question was preserved in the trial court by the State's timely, specific challenge. In moving to suppress evidence on the grounds asserted, Appellant had the burden to show not only that the seizure and search of his passenger's Carmex lip balm jar and the search of the surrounding space in the passenger compartment were illegal, but also that he had standing to object to the seizure and search. See Rawlings v. Kentucky, 448 U.S. 98, 104, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); State v. Bostick, 745 So.2d 496, 497 (Fla. 1st DCA 1999). "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." See Rakas v. Illinois, 439 U.S. 128, 133-34, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (quoting Brown v. United States, 411 U.S. 223, 230, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973)). In Rakas, 439 U.S. at 134, 99 S.Ct. 421, the United States Supreme Court stated that "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's . . . property has not had any of his Fourth Amendment rights infringed." The High Court in Rawlings noted that after Rakas, the essential question to be resolved in determining whether *428 a defendant has standing to challenge an alleged unreasonable seizure and search is "whether governmental officials violated any legitimate expectation of privacy held by [the defendant]." Rawlings, 448 U.S. at 106, 100 S.Ct. 2556; see Minnesota v. Carter, 525 U.S. 83, 88 & 91, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998). "[N]ormally A cannot challenge the legality of the search of B even when the search produces information used to convict A." United States v. Johnson, 380 F.3d 1013, 1015 (7th Cir. 2004); see Rawlings, 448 U.S. at 106, 100 S.Ct. 2556 (stating that record supported lower tribunal's conclusion that petitioner had no reasonable expectation of privacy in companion's purse when it was searched and, thus, petition could not challenge validity of search that disclosed controlled substances).
A defendant in strikingly similar circumstances to Appellant's situation asserted standing in Thomas v. State, 596 So.2d 518 (Fla. 5th DCA 1992). The police stopped a vehicle driven by Thomas. When Thomas and a passenger/co-defendant exited the vehicle, the officer noticed a bulge in the passenger/co-defendant's pants, whereupon a search of the passenger/co-defendant revealed a package containing cocaine. The passenger/co-defendant stated that Thomas had handed her the package of cocaine. See id. After being charged with possession, the passenger/co-defendant successfully moved to have the evidence suppressed on the ground that the search was illegal, but the trial court denied Thomas's motion to suppress the evidence illegally seized from the passenger/co-defendant, on the ground that Thomas lacked any reasonable expectation of privacy in the package of contraband and, thus, had no standing to challenge the search of the passenger/co-defendant. Thomas was convicted and appealed. See id. at 518-19. Noting that a defendant does not automatically have standing to suppress evidence merely because it was obtained in violation of the Fourth Amendment, see Rakas, 439 U.S. at 133-34, 99 S.Ct. 421, and Wong Sun v. United States, 371 U.S. 471, 492, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the Fifth District Court agreed with the finding that Thomas lacked standing. See 596 So.2d at 519; see also Hodge v. State, 629 So.2d 973, 974 (Fla. 5th DCA 1993) (holding that defendant/driver who consented to vehicle search after a valid traffic stop had no reasonable expectation of privacy in contents of passenger's purse, which was searched as passenger exited vehicle, revealing cocaine; therefore, defendant lacked standing to raise passenger's constitutional challenge in order to suppress evidence against defendant). Because Appellant had no reasonable expectation of privacy in the contents of his passenger's pants pocket, Appellant lacked standing to challenge the search of the passenger. Accordingly, the trial court erred in determining that Appellant did have standing.
Assuming arguendo that Appellant had met his burden to prove a reasonable expectation of privacy in the contents of his passenger's pocket, we would affirm the trial court's denial of Appellant's motion to suppress anyway for either of two grounds. "Review of a Florida motion to suppress is a mixed question of law and fact, yoked to federal law." Butler v. State, 706 So.2d 100, 101 (Fla. 1st DCA 1998); see Art. I, § 12, Fla. Const.; Perez v. State, 620 So.2d 1256 (Fla.1993). In reviewing the denial of a motion to suppress, we view the evidence and its reasonable inferences in a light most favorable to affirming the trial court's ruling. See Harford v. State, 816 So.2d 789, 791 (Fla. 1st DCA 2002). First, the traffic stop was unchallenged, and the record clearly demonstrates that Sergeant Johnson was justified in stopping Appellant after observing his vehicle weaving and then running completely *429 off the road. See Whren v. United States, 517 U.S. 806, 819, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (stating that traffic stop was reasonable where officers had probable cause to believe petitioners had violated traffic code). The trooper properly asked Appellant to step out of the vehicle and to produce his driver's license and vehicle registration. See Pennsylvania v. Mimms, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); Pierre v. State, 732 So.2d 376, 377-78 (Fla. 2d DCA 1999). In addition to the erratic driving, Appellant's overall appearance and demeanor and the presence of a white powder around his nostril gave this seasoned trooper probable cause to arrest Appellant. See § 901.15, Fla. Stat. (2004); Devenpeck v. Alford, 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."); Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (stating "probable cause" exists where "facts and circumstances" within officer's knowledge, and of which he or she had "had reasonably trustworthy information," are sufficient of themselves "to warrant a man of reasonable caution in the belief that an offense has been or is being committed"); Login v. State, 394 So.2d 183, 185 & 188 (Fla. 3d DCA 1981) (noting that detective's training and experience led him to recognize, as cocaine, two rings of white residue around shaking suspect's nostrils and provided probable cause for arrest for possession of cocaine). Appellant's suggestion that the trooper's failure to arrest him specifically for driving under the influence somehow tainted the grounds for the arrest and incidental search ignores the principle that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Whren, 517 U.S. at 813, 116 S.Ct. 1769; see Devenpeck, 543 U.S. at 153-54, 125 S.Ct. 588.
One of the recognized exceptions to the warrant requirement is a search incident to a valid arrest. See Belton, 453 U.S. at 457, 101 S.Ct. 2860. The United States Supreme Court in Belton held that as a contemporaneous incident of a lawful custodial arrest of the occupant of a motor vehicle, an officer can search the person arrested and "the immediately surrounding area," including "the passenger compartment" of the motor vehicle and the contents of any containers (whether open or closed) located inside the passenger compartment. Id. at 457, 460-63 & n. 4, 101 S.Ct. 2860; see Union v. State, 660 So.2d 803, 804 (Fla. 2d DCA 1995). "The search incident to arrest is reasonable under the Fourth Amendment because the privacy interest protected by that constitutional guarantee is legitimately abated by the fact of arrest." United States v. Robinson, 414 U.S. 218, 237-38, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (Powell, J., concurring). The drugs, paraphernalia, and precursor chemicals for manufacturing methamphetamine were found during a lawful search of the passenger compartment of Appellant's truck after Appellant's passenger was arrested.
Indeed, the second ground for affirming the trial court's ruling on the motion to suppress relates to the trooper's contact with the passenger. When Sergeant Johnson approached the passenger's side of the truck to ask for identification, the very nervous passenger asked if he could step outside. As the passenger patted himself down in an unsuccessful search for identification, the trooper noticed the small, round bulge in the passenger's pants pocket. When the trooper inquired as to the nature of the object, the passenger reached into his pocket, removed the *430 well-worn Carmex lip balm container, and held it out in his open palm as if presenting it to the trooper. When the trooper asked what was inside the jar, the passenger said nothing, but when the trooper asked if he could look inside the jar, the passenger moved the object even closer to the trooper. A valid consent is one of the well-established constitutional exceptions to the warrant requirement. See Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Smith v. State, 753 So.2d 713, 715 (Fla. 2d DCA 2000). "The consent may be in the form of words, gesture, or conduct." United States v. Griffin, 530 F.2d 739, 742 (7th Cir.1976); United States v. Carter, 378 F.3d 584, 587 (6th Cir.2004). The State met its burden to prove that the passenger's consent (through his gesture or conduct) for the trooper to receive and open the Carmex container was freely and voluntarily given, and not "mere acquiescence to police authority." Smith, 753 So.2d at 715; United States v. Reid, 226 F.3d 1020, 1026 (9th Cir.2000). We find no affront to the Fourth Amendment in Sergeant Johnson's then shaking the container and hearing loose contents (uncharacteristic of lip balm), unscrewing the lid, and viewing what was inside. Convinced from his training and experience that the white, powdery crystals inside resembled methamphetamine, the trooper arrested the passenger and conducted a lawful Belton search of the passenger compartment of the vehicle incident to the arrest. Because Appellant showed no reasonable expectation of privacy in the contents of his passenger's pocket and, thus, lacked standing, and the searches were proper, the trial court correctly denied Appellant's motion to suppress.
Appellant contends that Trooper Johnson's credibility was compromised by his acknowledgment on cross-examination that he had not noted in his written post-arrest report that he had observed white powder around Appellant's nostril. Given the direct testimony that the trooper did observe the white powder around Appellant's nostril, and the trooper's failure to mention this observation specifically in the written report, the trial court believed the trooper and thereby properly exercised its authority to weigh the evidence and determine witness credibility. See Demps v. State, 462 So.2d 1074, 1075 (Fla.1984). We AFFIRM the judgment and sentence.
BARFIELD and THOMAS, JJ., concur.