979 So.2d 1148 (2008)
Dwayne Kenyotis WATSON, Appellant,
v.
STATE of Florida, Appellee.
No. 1D07-1346.
District Court of Appeal of Florida, First District.
April 17, 2008.
*1150 Nancy A. Daniels, Public Defender, and Phil Patterson, Assistant Public Defender, Tallahassee, for Appellant.
Bill McCollum, Attorney General, Anne C. Conley and Natalie D. Kirk, Assistant Attorneys General, Tallahassee, for Appellee.
BROWNING, C.J.
Dwayne Kenyotis Watson (Appellant) entered a guilty plea to the charge of actual or constructive possession of a controlled substance, MDMA, popularly known as "Ecstasy," after reserving the right to appeal the denial of his dispositive motion to suppress evidence. We affirm the judgment and sentence.
By law, we follow the applicable United States Supreme Court precedents governing the evaluation of "search and seizure" questions in Florida. See Art. I, § 12, Fla. Const.; Holland v. State, 696 So.2d 757, 759 (Fla.1997). In reviewing the denial of the motion to suppress, we note that mixed questions of law and fact that ultimately determine constitutional rights are examined using a two-part approach. We defer to the trial court on questions of historical fact, reviewing the evidence and all reasonable inferences in a light most favorable to affirming the trial court's ruling. We review de novo the constitutional issue(s). See United States v. Bajakajian, 524 U.S. 321, 337 n. 10, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998); Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); Connor v. State, 803 So.2d 598, 605 (Fla.2001); Ingram v. State, 928 So.2d 423, 428 (Fla. 1st DCA 2006).
On January 8, 2006, Gainesville police officers were dispatched to the Gardenia Gardens Apartment complex after an early-morning report of a gunshot and disturbance at Unit I-2. A number of uniformed officers gathered at the front and rear doors of Unit I-2 and maintained communications with one another. From her post outside, Officer Knighton radioed that she heard a lot of noise and commotion inside. Officer Knighton entered the front door, walked through the apartment, and opened the back door, allowing Sergeant Nechodom and other officers to enter the apartment, inside which the sergeant observed a spent casing on the floor and what appeared to be bullet holes in the wall. After walking through the kitchen/dining areas, the sergeant observed two men 15-20 feet away, seated quietly and calmly on a couch in the adjoining living room. Officer Knighton and, perhaps, a second officer were already inside. None of the officers had their guns out. No one was yelling or saying anything. At the suppression hearing, Sergeant Nechodom identified Appellant as one of the two seated men. Appellant was not handcuffed as he sat on the couch.
Within thirty seconds of arriving and entering the rear door of the apartment, after which he observed evidence of a gunshot and the absence of handcuffs on the suspects, Sergeant Nechodom asked Officer Knighton if the suspects and the couch area had been checked. Officer Knighton indicated that she had patted down the two men for weapons, but the sergeant did not get a clear response regarding the couch area. Given his experience that female *1151 officers might be more shy or less thorough than male officers when checking a male suspect's crotch area, and his knowledge that a gunshot reportedly had been fired and a weapon might be present, Sergeant Nechodom wanted to double-check to ensure that neither man was hiding a weapon there. In a polite, non-authoritative tone of voice, the sergeant said: "Hey, I just want to check the area you're sitting in. That way, we can talk, figure out what's going on here. I'll feel more comfortable." He asked if Appellant would mind standing up so that the couch area could be checked. The subsequent search of the couch area revealed nothing.
Next, Sergeant Nechodom said to Appellant: "Listen, I know another officer's patted you down. I just want to double-check, make sure that you don't have any weapons or anything. It's just for my piece [sic] of mind." At that point, Appellant was standing with his back toward the sergeant. Figuring that it would not hurt to ask for consent to search Appellant's pockets for "any ammo or anything," Sergeant Nechodom asked: "Hey, do you mind if I take a look inside your pockets?" Appellant then raised his arms in the air, turned his right shoulder so that he could see the sergeant, and said something like "Go ahead, Man, you can check me." or "No. You can go ahead and take a look, Man. I don't have anything." Sergeant Nechodom testified that it was clear to him that Appellant was freely consenting to a search of his whole person. The sergeant searched Appellant's crotch area and right pocket and found a small plastic Ziplock bag with pills in it. From his training and experience in narcotics investigations, he believed the pills were consistent with MDMA. No weapon or bullet was found in Unit I-2.
Appellant contends that the officers' warrantless entry into the apartment is illegal, and that the State failed to prove by clear and convincing evidence that the chain was broken between the initial police misconduct and Appellant's subsequent purported free and voluntary consent to search his pockets. See Reynolds v. State, 592 So.2d 1082, 1086 (Fla.1992). Appellant asserts that his "consent" was no more than acquiescence to the apparent authority of the police to search him. See United States v. Mendenhall, 446 U.S. 544, 554-55, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); Johnson v. United States, 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Gonzalez v. State, 578 So.2d 729, 733 (Fla. 3d DCA 1991).
The State responds that even if Appellant, who did not reside in Unit I-2, had standing to challenge the warrantless entry in the apartment, the officers' entry was lawful and justified by the exigent or emergency circumstances known then by the officers. See Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Steagald v. United States, 451 U.S. 204, 211-12, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." Brown v. United States, 411 U.S. 223, 230, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); Rakas v. Illinois, 439 U.S. 128, 133-34, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); Ingram, 928 So.2d at 427. To invoke the Fourth Amendment to suppress the personal search, Appellant had to demonstrate that he had a subjective expectation of privacy in the location searched and that his expectation was legitimate, i.e., "one that society is prepared to recognize as `reasonable.'" Katz v. United States, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); Rawlings v. Kentucky, 448 U.S. 98, 106, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); Rakas, 439 U.S. at 143 n. 12, 99 S.Ct. 421; see Minnesota v. Olson, 495 U.S. 91, 95-96, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). It is well-established *1152 that "[t]emporary visitors or short-term invitees . . . are generally unable to advance a position of privacy with success." Hicks v. State, 852 So.2d 954, 959 (Fla. 5th DCA 2003). Because Appellant never proved his standing and the trial court never ruled on this claim, the argument that the officers' warrantless entry is illegal was waived or abandoned and is procedurally barred from consideration on appeal. See Booker v. State, 969 So.2d 186, 194-95 (Fla.2007); Mungin v. State, 932 So.2d 986, 995 (Fla.2006). To the extent that Appellant suggests for the first time on appeal that defense counsel might have been ineffective, the State responds, first, that such an argument generally is not appropriately raised for the first time on direct appeal; and, second, that the face of the record demonstrates that Appellant did not receive ineffective assistance of counsel on this issue. See Blanco v. Wainwright, 507 So.2d 1377, 1384 (Fla. 1987); Abbott v. State, 958 So.2d 1140, 1143 (Fla. 4th DCA 2007).
The State correctly adds that even if Appellant had standing to challenge the officers' warrantless entry, their understanding that one or more gunshots had been fired recently inside Unit I-2 and the presence of noise or a commotion inside justified their immediate actions under Hayden and Steagald. See United States v. Standridge, 810 F.2d 1034, 1037 (11th Cir.1987); Riggs v. State, 918 So.2d 274, 281 (Fla.2005); State v. Barmeier, 878 So.2d 411, 413 (Fla. 3d DCA 2004); State v. Boyd, 615 So.2d 786, 788-89 (Fla. 2d DCA 1993). That is, the exigencies of the circumstances were sufficiently compelling to render the warrantless entry "objectively reasonable under the Fourth Amendment." See Mincey v. Arizona, 437 U.S. 385, 392-94, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); Boyd, 615 So.2d at 788-89.
"Warrantless searches are per se unreasonable under the Fourth Amendment . . . and Article I, section 12, of the Florida Constitution, subject to a few specifically established and well-delineated exceptions." Id. at 788 (citing Katz, 389 U.S. at 357, 88 S.Ct. 507). One of these is the "emergency or exigency doctrine." See Steagald, 451 U.S. at 211-12, 101 S.Ct. 1642; Wike v. State, 596 So.2d 1020, 1024 (Fla.1992); Grant v. State, 374 So.2d 630, 631-32 (Fla. 3d DCA 1979); Webster v. State, 201 So.2d 789, 792 (Fla. 4th DCA 1967).
Competent substantial evidence demonstrated that the officers briefly detained Appellant on the living room couch. The initial weapons pat-down by Officer Knighton was not challenged. A short time later, Sergeant Nechodom elicited Appellant's free and voluntary consent to a personal search, the scope of which clearly was within the limits approved by Appellant in both his oral replies and his body language. See United States v. Griffin, 530 F.2d 739, 742 (7th Cir.1976) (noting that "consent may be in the form of words, gesture, or conduct"); Robbins v. MacKenzie, 364 F.2d 45, 48 (1st Cir.1966); Ingram, 928 So.2d at 430. The record being devoid of any testimony that the officers acted in a coercive, oppressive, or dominating manner, Appellant's consent was not mere acquiescence to apparent police authority. See Mendenhall, 446 U.S. at 554-55, 100 S.Ct. 1870; State v. Parrish, 731 So.2d 101, 103 (Fla. 2d DCA 1999).
The trial court correctly denied the motion to suppress evidence. We AFFIRM the judgment and sentence.
VAN NORTWICK and ROBERTS, JJ., concur.