WHATLEY, Judge.
 

 Jose Luis Gamez, Jr., was charged with trafficking in methamphetamine and possession of paraphernalia. The trial court granted his motion to suppress based on its finding that Gamez did not consent to a search of his person and that, even if he had consented, such consent was a concession to police authority. We reverse because the evidence presented at the hearing on the motion to suppress does not support the trial court’s findings.
 

 At the hearing, Detective David Ogg testified that he stopped Gamez’s car after it failed to stop at two stop signs. When Detective Ogg spoke with Gamez, he appeared very nervous and was physically shaking. Detective Ogg asked Gamez if he could talk to him by the detective’s car, away from the passengers in Gamez’s vehicle.
 

 When they walked back to his car, Detective Ogg first asked Gamez if he had any objection to the detective searching his car and Gamez said he did not. He then asked Gamez if he had anything illegal on him. Gamez said no and Detective Ogg asked if he could double check. Detective Ogg testified that Gamez then raised his hands above his head and spread out his feet, indicating that he was giving consent to search his person.
 

 Detective Ogg patted down Gamez and Gamez did not pull away or otherwise indicate that he did not want to be searched. Detective Ogg felt a “squishy” material wrapped in plastic on Gamez’s waistline. Based on his training and experience, Detective Ogg believed that the plastic contained methamphetamine, marijuana or cocaine.
 

 Detective Ogg asked Gamez to empty his pockets and Gamez took out a couple of cell phones and a roll of money. Detective Ogg asked Gamez if he could double check
 
 *247
 
 his pockets and Gamez again raised his hands. Detective Ogg found another roll of money and methamphetamine in a plastic bag.
 

 After the hearing on the motion to suppress, the trial court specifically stated that it was going to suppress the evidence found in Gamez’s pants, because there was not clear and convincing evidence that Gamez gave Detective Ogg consent to search his person when he lifted his hands and spread his feet. But the written order granting the motion to suppress, which was prepared by Gamez’s attorney, differs from the trial court’s oral findings because it also states that the consent was a concession to Detective egg’s authority. We will address both issues.
 
 [1]
 

 Consent to search may be in the form of conduct, gestures, or words.
 
 United States v. Griffin,
 
 530 F.2d 739, 742 (7th Cir.1976);
 
 Ingram v. State,
 
 928 So.2d 423, 430 (Fla. 1st DCA 2006). In
 
 Griffin,
 
 530 F.2d at 743, the court held that the appellee gave his voluntary consent to enter his apartment where officers asked him if they could enter and the appellee stepped back, left the door open, and led the officers into the apartment. The court noted that the appellee’s behavior after the officers entered the apartment also supported this holding where the appellee never objected in any way to the officers’ presence inside the apartment.
 
 Id.
 
 at 743 n. 3.
 

 Similarly, in
 
 Watson v. State,
 
 979 So.2d 1148, 1151 (Fla. 1st DCA 2008), a law enforcement sergeant asked the appellant if he could search his person and the appellant raised his arms in the air, turned so that he could see the sergeant, and told the sergeant that he could check him. The First District held that the appellant’s consent to search his person was freely and voluntarily given and was evidenced by his oral replies and his body language.
 
 Id.
 
 at 1152.
 
 Cf. Wynn v. State,
 
 14 So.3d 1094, 1096 (Fla. 2d DCA 2009) (holding that appellant did not unequivocally consent to a search when deputy asked him if he would mind if the contents of his pockets were removed, and appellant did not respond).
 

 In the present case, the facts were not in dispute at the hearing on the motion to suppress. When Detective Ogg asked Gamez if he could check to see if he had anything illegal on him, Gamez raised his hands above his head and spread out his feet. Further, when Detective Ogg asked to search him a second time, Gamez responded the same way by raising his hands. We conclude that these actions conveyed Gamez’s consent to search his person. As in
 
 Griffin,
 
 Gamez’s behavior after Detective Ogg began to search him also supports the conclusion that Gamez consented to a search of his person, because Gamez never pulled away or otherwise indicated that he did not want to be searched.
 

 We also conclude that Gamez’s consent to search was voluntary. ‘Where the police have not engaged in illegal conduct, the State bears the burden of showing the voluntariness of a consent to search by a preponderance of the evidence.”
 
 Luna-Martinez v. State,
 
 984 So.2d 592, 598 (Fla. 2d DCA 2008),
 
 review denied,
 
 11 So.3d 942 (Fla.2009). “To con-
 
 *248
 
 elude that a search is involuntary, the court must find that the defendant’s ‘will [was] overborne and his capacity for self-determination critically impaired.’”
 
 Cox v. State,
 
 975 So.2d 1163, 1168 (Fla. 1st DCA 2008) (quoting
 
 Schneckloth v. Bustamante,
 
 412 U.S. 218, 225, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)).
 

 Gamez contends that his consent was a concession to Detective Ogg’s authority, and therefore, it was not voluntary. However, the only fact he points to in support of his argument is that he was subjected to an investigatory stop at the time he gave his consent. We conclude that this was insufficient to support the finding that his consent was involuntary.
 

 In
 
 I.R.C. v. State,
 
 968 So.2d 583, 585 (Fla. 2d DCA 2007), a deputy sheriff took the appellant out of his classroom at a public high school and explained to him that he had heard that the appellant had marijuana.
 
 Id.
 
 at 586. The deputy asked the appellant if he could search his bag and his person for illegal drugs, and the appellant handed the bag to the deputy, said “go ahead,” and he put out his arms “as if to search his person.”
 
 Id.
 
 However, at the motion to suppress hearing, the appellant testified that his consent was involuntary because he felt that he did not have a choice to consent.
 
 Id.
 

 In
 
 I.R.C.,
 
 968 So.2d at 587, this court held that the appellant’s consent was voluntary and that, although knowledge that the person has a right to refuse the search is a relevant factor in determining whether the consent is voluntary, there is no presumption that a search is involuntary when he or she is not told that they may refuse the search. This court further held that when the individual has been detained or arrested, this circumstance does not mandate that the consent is involuntary.
 
 Id.
 
 at 586. Instead, courts must look at the totality of the circumstances surrounding the consent in determining whether it is voluntary.
 
 Id,,
 
 at 587.
 

 In
 
 I.R.C.,
 
 this court concluded that the record did not support the appellant’s argument that his consent was a “mere acquiescence to police authority.”
 
 Id.
 
 The appellant’s testimony that he felt he had no choice regarding whether to consent did not support his argument, because there was no evidence he suffered from a vulnerable, suggestive state and there was no evidence of coercive circumstances or coercive conduct by the deputy.
 
 Id.
 

 In
 
 Ingram,
 
 the passenger in a truck that was legally stopped was asked for his identification. The passenger, who was acting very nervous, asked if he could step outside the vehicle. 928 So.2d at 426. He then got out of the truck and patted himself down, searching unsuccessfully for identification.
 
 Id.
 
 The trooper noticed and asked about a small, round bulge in the passenger’s pants pocket and the passenger reached into the pocket, removed a lip balm jar, and held it out in his open palm as if meaning to present it to the trooper.
 
 Id.
 
 When the trooper asked to look inside the jar, the passenger held out the jar even closer to the trooper.
 
 Id.
 
 The trooper thereafter found methamphetamine in the jar.
 
 Id.
 
 The First District held that the passenger freely and voluntarily gave his consent to search the jar through his gesture or conduct and such consent was not in acquiescence to the trooper’s authority.
 
 Id
 
 at 430.
 

 Here, there is no evidence supporting Gamez’s argument that his consent was a mere acquiescence to police authority. Gamez never testified that he felt his consent was not voluntary or that he felt he did not have a choice. Further, there was no evidence that Gamez suffered from a vulnerable, subjective state, caused by a mental condition, age, intelligence, or education.
 
 See I.R.C.,
 
 968 So.2d at 587. We
 
 *249
 
 also note that there was no evidence of a coercive circumstance or any coercive conduct by Detective Ogg, such as a show of force, threatening conduct, a prolonged detention, or deception.
 
 Id.
 
 The fact that Gamez was subject to a traffic stop and was asked to talk to the detective by his car was insufficient to support a finding that his consent was involuntary.
 

 Accordingly, we reverse the trial court order granting Gamez’s motion to suppress and remand this case for further proceedings.
 

 Reversed and remanded.
 

 NORTHCUTT and KELLY, JJ., Concur.
 

 [1]
 

 . We review the trial court’s factual findings in a manner most favorable to sustaining the trial court's findings, but we conduct a de novo review of the application of those facts to the law.
 
 Luna-Martinez
 
 v.
 
 State,
 
 984 So.2d 592, 597 (Fla. 2d DCA 2008),
 
 review denied,
 
 11 So.3d 942 (Fla.2009). The determination regarding whether consent to search is voluntary is a legal issue that is determined under the de novo standard of review.
 
 Id.